## WALTER L. HAYES *vs.* PENN MUTUAL LIFE INSURANCE COMPANY & others, executors.

Suffolk.   November 15, 1915. — January 7, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Equity Jurisdiction,* To reform an instrument because of mutual mistake, To compel repayment of consideration of void contract.   *Insurance,* Endowment. *Equity Pleading and Practice,* Report of findings of fact, Appeal, Amendment of bill.   *Contract,* Reformation, Validity.   *Evidence,* Presumptions and burden of proof, Relevancy, Opinion.

A stenographic report of an oral statement by the judge before whom a suit in equity is heard, made at the close of the plaintiff's evidence, when the judge of his own motion ordered a decree dismissing the bill, is not a report of his findings of fact within the provisions of R. L. c. 159, § 23.

In the present suit, on an appeal by the plaintiff, all the parties having treated such a stenographic report as a report under R. L. c. 159, § 23, this court so treated it.

In order for the plaintiff in a suit in equity for the reformation of the provisions of a policy of insurance on the ground of mistake to be entitled to relief, he must show more than the mistake of one party to the policy.   It must be found that there was a mutual mistake common to all of the parties to the policy, and the burden of establishing that fact is upon the plaintiff.

In a suit in equity by the person insured under the provisions of an endowment life insurance policy, which was payable at the end of the endowment period, either if the insured then was living or at his death, to his wife or her executors, administrators or assigns, against the insurer and persons interested in the estate of the insured's wife, who had died testate, the plaintiff sought to reform the policy to make it payable to himself at the end of the endowment period, alleging that he in taking out the policy and the company in issuing it had intended that it should so read and that a mutual mistake had been made.   At the hearing of the suit it appeared that the policy as written was exactly in accordance with the terms of the application made in writing by the plaintiff, which was before the insurer when the policy was written, and that the application was unmistakable in its terms.   The justice who heard the suit found that the application was made out and signed at the request of one of a firm of two soliciting agents of the insurer after negotiations with the other member of the firm, that he was unable to find that the insurer "made a mistake and supposed they were issuing something else," and that the fact of a mutual mistake was not made out by such "strong and satisfactory proof" as is required in equity as the ground for reforming a written contract; and by his order the bill was dismissed. *Held,* that the dismissal of the bill was warranted.

At the hearing of such suit, after the soliciting agent who had had the preliminary negotiations with the plaintiff had testified as to them, it was proper to exclude further testimony of this agent that he understood that the policy had

been made payable to the plaintiff at the end of the endowment period and that a mistake had been made as to the beneficiary.

Evidence as to the understanding of the plaintiff's wife, not induced by anything said or done by the insurer, also was irrelevant and properly was excluded.

In a suit in equity for the reformation, because of mutual mistake, of a policy of endowment life insurance so that at the end of the endowment period it will be payable to the plaintiff, the insured, instead of to his wife, her executors, administrators or assigns, where after a hearing it appears that the plaintiff thought that the policy was so payable to him, but that the policy cannot be reformed because the justice who heard the suit is unable to find that there was any mistake on the part of the insurer, the policy having been issued exactly in accordance with an application signed by the plaintiff, on an appeal from a decree dismissing the bill, where all the evidence is reported, this court, neither under the provisions of St. 1913, c. 716, § 3, nor otherwise without an amendment to the bill, can give the plaintiff relief by declaring the policy void on the ground that there was no meeting of minds and hence no contract at all and by ordering that the premiums be repaid to him on the ground that they were paid without consideration. Whether such amendment should be made should first be determined by the court where the suit is pending.

BILL IN EQUITY, filed in the Superior Court on March 12, 1914, and afterwards amended, and under St. 1911, c. 284, removed to the Supreme Judicial Court.

The allegations of the bill were in substance that the plaintiff, after negotiations with soliciting agents of the defendant, made an application for a thirty year endowment policy, understanding that the policy would be payable at the end of the endowment period, December 1, 1916, to him, if he then was living, or if he should die before that time, that it would be payable to his wife, her executors, administrators or assigns; that his wife, Fanny F. S. Hayes, had died on March 27, 1912, leaving a will making the defendant Mary S. H. Rouse, the daughter of the plaintiff and the testatrix, her residuary legatee; that not until after the death of his wife did the plaintiff know that by the provisions of the policy it was made payable, both at the end of the endowment period, in case the plaintiff were living, and also in case of his death before the end of that period, to his wife, her executors, administrators or assigns. The prayers of the bill were that the defendant insurance company be enjoined from paying the amount of the policy to the executors of the will of the plaintiff's wife, and that the policy be reformed "and the mutual mistake made in the terms thereof so corrected that the same shall so read as to be payable as an endowment at the end of the thirty year period to the plaintiff."

The suit was heard by *Hammond*, J., a commissioner being appointed under Equity Rule 35 to take the evidence. The material evidence and certain exceptions of the plaintiff to the exclusion of certain evidence are described in the opinion.

The rulings asked for by the plaintiff and referred to in the opinion, were as follows:

"9. The application may be explained in the light of what was said by the contracting parties.

"10. The plaintiff having notified both Mr. DeForest and Mr. Knox that he wanted an endowment policy in which the endowment was payable to himself, and Mr. Knox having represented that such a policy would be issued to him, the drawing up of the application by Mr. Knox, the agent of the company, in such a way as to require an endowment payable to the plaintiff's wife or her estate, instead of to the plaintiff, was a mistake in the making of the contract which is, in law, the mistake of the insurance company as well as of the plaintiff.

"11. On the facts the failure of Mr. Knox to make the application call for a policy payable as an endowment to the plaintiff was a mistake, and such mistake was legally the mistake of the defendant insurance company he represented.

"12. On the facts the mistake was a mutual mistake in the making of the contract."

By order of the single justice, made on his own initiative at the close of the plaintiff's evidence, a decree was made dismissing the bill with costs. The plaintiff appealed.

*H. R. Scott*, for the plaintiff.

*G. Hoague*, for the defendants.

RUGG, C. J. This is a suit in equity whereby the plaintiff seeks to reform an endowment policy of life insurance, issued by the defendant in 1886. The policy is upon the life of the plaintiff, payable to his wife and her executors, administrators and assigns at the expiration of thirty years, or upon his decease before that time. The wife has deceased. The plaintiff avers that by the mutual mistake both of himself and the defendant insurance company the policy was made in that form, and that both intended that the policy should be made payable to him at the maturity of the endowment period, and payable to his wife only in the event of the insured's death before that time.

The cause was heard before a single justice, who entered a final decree dismissing the bill. It now comes before us on the plaintiff's appeal with a report of all the evidence.

Both parties have treated the stenographic report of the oral statement of the single justice, made at the conclusion of the plaintiff's evidence, of reasons for ordering the decree dismissing the bill, as a finding of facts under R. L. c. 159, § 23. But obviously it is not that. It is open to grave doubt whether the single justice intended it to be anything more than the somewhat informal announcement of conclusions · often made at the end of a hearing when the judge feels so clear as to the decree which ought to be entered that he does not desire further time for consideration. But, treating this stenographic report as the parties have treated it, no error appears.

The single justice ruled rightly as matter of law that, in order that the plaintiff be entitled to relief, there must be a mutual mistake common to all the parties to the policy, and that the burden of proof on this point rested on the plaintiff. The mistake of one is insufficient. *Page* v. *Higgins,* 150 Mass. 27. *Tourtillotte* v. *Tourtillotte,* 205 Mass. 547, 552. *Dzuris* v. *Pierce,* 216 Mass. 132, 135.

The findings of fact were, in substance, that the plaintiff supposed the contract of insurance to be in accordance with his present contention, but that there was not sufficient evidence to show that the contract issued by the insurance company was not the policy which it understood was called for by the plaintiff's application, and in form and substance such as it intended to issue; that the evidence relating to that point was vague and did not satisfy the requirements of the law; that· DeForest was not "the active, managing, corporate man to issue contracts; he was an agent of substantially limited powers;" and that he was unable to find that the "insurance company made a mistake and supposed they were issuing something else." On the contrary, he found that the application of the plaintiff for the insurance was before the company, and the policy issued was exactly in accordance with its terms.

The testimony bearing upon the crucial point of the case came from witnesses who testified orally before the single justice. The familiar rule, upon an appeal in equity with a report of all the

evidence, is that the appeal brings before this "court questions of fact as well as questions of law, and it is the duty of the court to examine the evidence, and to decide the case according to its judgment, giving due weight to the finding of the judge. . . . It is however true that upon an appeal from a decree of a judge in equity upon questions of fact, arising on oral testimony heard before him, his decision will not be reversed unless it is plainly wrong. *Dickinson* v. *Todd*, 172 Mass. 183, and cases cited." *Colbert* v. *Moore*, 185 Mass. 227. *Lindsey* v. *Bird*, 193 Mass. 200. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138. *Wright* v. *Shaw*, 202 Mass. 541, 544. The question, then, is whether under this rule the finding of the single justice, to the effect that the plaintiff failed to prove mistake on the part of the defendant in issuing the policy, should stand.

The policy was issued in accordance with the terms of the application. No question is made on that point. The plaintiff testified to the effect that his entire negotiations respecting the issuance of the policy up to the filing of the final application was had with DeForest, mentioned above. In various forms of language he testified further that DeForest recommended an endowment policy in such form that the insured would be the beneficiary if he lived, and his wife would be the beneficiary if he died. His testimony was unequivocal and direct to this effect. DeForest testified that, in the negotiations with the plaintiff, "I distinctly said to him that in the event of his death the policy would be payable to his wife, and that in the event of his surviving the period of thirty years it would be payable to himself. . . . If he survived the endowment period, the policy would mature as a claim collectible by himself."

There is no evidence of any mistake on the part of the company in issuing the policy, for that was in conformity to the application. The plaintiff's case rests, therefore, in its last analysis upon the proposition that the mistake occurred in making out the application, in that it did not conform to the terms orally agreed upon.

The application on which the policy was founded was signed by the plaintiff after having been written in his presence by the partner of DeForest, one Knox, who died several years ago. The mistake, according to the plaintiff's theory, must have had its inception here. DeForest was not present when the applica-

tion was made out and signed. Confessedly there was a modification at this interview of the negotiations previously had between the plaintiff and DeForest. There had been in contemplation a single policy for $5,000. But as a result of talk between the plaintiff and Knox, application was made for two policies, each for $5,000, and the two policies subsequently were issued. One of them later lapsed or was cancelled.

The plaintiff's narration of what occurred at the interview between him and Knox was in substance that he would be the beneficiary if he lived, and that his wife would benefit if he died; and that nothing was said with reference to the wife being the beneficiary in case both lived to the end of the endowment period; and that he told Knox that he wanted a policy payable to himself in every event except that of his death before the maturity of the endowment period. Notwithstanding this testimony the single justice well may have thought, that although the plaintiff was honest in his testimony as to this recollection, yet as it related to an interview which occurred more than a quarter of a century before, it was extremely unlikely that a general soliciting agent of a life insurance company for the metropolitan district with New York as its centre would have made so vital a mistake in writing an application for insurance, that there was no mistake on the part of Knox, and that he knew perfectly well the kind of application which he wrote and that he intended to write exactly that which was written. This seems a reasonable view of the evidence. If this view was entertained, then the conclusion follows that there was no evidence of mistake on the part of the insurance company and hence no mutual mistake.

The application was unmistakable in its terms. In answer to the question, " Give the name and post office address of the party for whose benefit the insurance is proposed," there was written, "Mrs. Fannie S. Hayes, Dorchester, Mass." This can mean nothing else than that she alone was to receive any benefit from the policy, since there is nothing elsewhere in the application to modify or narrow this general designation of the beneficiary.

The only evidence as to the authority of Knox and DeForest, who were partners, came from the latter, who, called as a witness by the plaintiff, testified in substance without objection or exception that they were general agents representing the defendant

in New York City, whose duties were those of soliciting agent and writing applications and the general conduct of the New York agency; and that he "had no right to bind the insurance company in any way." This hardly goes far enough, in connection with all the other circumstances of this case, to show that a mistake in writing an application, even if it be assumed that one were made, binds the company after it in good faith has issued a policy in accordance with the application, which has been taken and kept according to directions of the insured.

The finding of the single justice that the fact of a mutual mistake was not made clear by such "strong and satisfactory proof" as is required in equity, as the ground for reforming a written contract, is supported by the evidence. *Canedy* v. *Marcy,* 13 Gray, 373, 377.

The plaintiff offered to show that the form of application used for this policy had given rise to mistakes in other instances and therefore had been changed. This evidence rightly was excluded. The plaintiff was permitted to show that in an insurance sense the phrase "thirty year endowment" meant that at the expiration of thirty years, if the insured is still living, the policy becomes a claim and the company must pay the face of the policy to the beneficiary named in the policy — in this instance to Mrs. Fannie S. Hayes. Whether other people beside this plaintiff misunderstood its signification had no bearing upon the question whether these parties made a mistake.

There was no error in the ruling excluding the testimony offered, that the witness DeForest as the soliciting agent understood that the policy was payable to Mr. Hayes and that, in view of what Mr. Hayes expected and in view of what the defendant company issued, a mistake had been made as to the beneficiary. The final interview as to the application was not with the witness but with Knox. The witness was permitted to testify fully about all that was said by him during the course of solicitation for the insurance.

The evidence as to the understanding of Mrs. Hayes touching the meaning of the policy rightly was excluded. She was not present when the application was made. Her understanding, not induced by anything said to her by the defendant or its agents, had no relevancy to a mistake by the insurance company.

The hearing took place before the single justice on October 13,

1914, and on that date, at the conclusion of the plaintiff's evidence and without hearing the defendant, the order was made that a decree be entered dismissing the bill. A formal order for a final decree was entered on October 27, 1914. On that day certain requests for rulings were filed, upon which the single justice made note of his disposition of them. He made no order, however, that they be incorporated in the record or be treated as if seasonably presented. The final decree was entered on November 17, and the appeal therefrom on November 23, 1914. The single justice resigned from this court on December 1, 1914. These requests have been printed under a stipulation with the statement that it is against the objection of the defendant.

Treating these requests as properly before us, but without so deciding, no error is disclosed. The ninth request rightly was refused in the form in which it was presented. The question ultimately decisive was whether there was a material mistake in the terms of the application, not whether there was anything to explain in it. The tenth request rightly was denied, if for no other reason, because it contained the assumption of fact that Knox had represented that a policy would be issued to the plaintiff, payable to him in the event that he survived. That was not one of the facts found by the single justice. As has been pointed out, there would be great difficulty in making such a finding. The eleventh and twelfth requests involve a finding of fact as to the intent of Knox in filling out the application, which the single justice failed to make. They were rightly refused for this reason, and it is not necessary to determine whether they are sound in other respects.

The plaintiff has asked, in the able argument made in his behalf in this court, for relief by declaring the policy void on the ground that there never was a meeting of minds as to the terms of insurance and hence no contract at all, and that he ought to recover the money which he has paid as paid without consideration. That is not the frame of the present bill. The facts have not been ascertained on that issue. The defendant never has been heard on it. This does not appear to be a case for the exercise of the authority conferred by St. 1913, c. 716, § 3. If the plaintiff is advised that amendments changing the form of the bill to one asking for that form of relief should be made, he may

ask leave to amend before a single justice. *Merrill·*v. *Beckwith,* 168 Mass. 72. *Day* v. *Mills,* 213 Mass.·585. *Strout* v. *United Shoe Machinery Co.* 215 Mass. 116, 119.

*Decree affirmed with costs.*