MOSES H. GULESIAN *vs.* ST. JAMES AMUSEMENT COMPANY.

Suffolk.    January 11, 1921. — March 10, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & JENNEY, JJ.

*Equity Pleading and Practice*, Master, Appeal. *Landlord and Tenant*, Construction of lease, Damages for breach of covenants. *Damages*, For breach of contract, In equity.

A suit in equity by a lessor against a lessee, brought fifty-three days before the end of the term of the lease, sought specific performance of certain covenants by the lessee regarding prompt repairs and replacements as needed, and damages. The suit was referred to a master to determine "what specific relief,

if any, the plaintiff" was entitled to in the way of repairs and replacements, and to "report to this court, in separate items, what sums in damages would be just and adequate to compensate the plaintiff, as alternative relief, instead of the several items of specific relief, if any, to which the master may find the plaintiff entitled," the parties stipulating that they waived all rights to file objections and exceptions to the report, that proper decrees might be entered confirming it and for relief, and that they waived "all rights of appeal from any interlocutory decree or final decree that may be entered." The master orally stated his proposed findings to the parties six days before the end of the term of the lease, and the defendant partially performed in accordance therewith. Three days before the end of the term, the plaintiff informed the defendant that, after the end of the term, he would not be permitted to enter the premises for further work. It would have been impossible for the defendant completely to comply with the master's oral findings in the remaining three days. At the end of the term a new tenant entered under a new lease from the plaintiff and he was willing to admit the defendant to the premises for the purpose of working therein. Four days after the termination of the lease, the master filed his report, which contained specific findings stating things to be done by the defendant by way of repairs and replacements, but no findings as to damages. Over eight months later, by an interlocutory decree from which no appeal was taken, the suit was referred to a second master to determine what damages the plaintiff had sustained by reason of any failure of the defendant to perform his covenants under the lease. The second master assessed damages and an interlocutory decree confirming the report and a final decree directing the payment of damages in accordance therewith were entered, from which the defendant appealed. *Held,* that

(1) The stipulation of the parties as to the reference to the first master did not make improper the reference to the second master for the findings of facts which the first master was directed to make but had failed to make;

(2) The facts appearing upon the record did not require the discharge of the report of the first master;

(3) The first master's oral announcement of his proposed findings constituted no part of his report;

(4) The plaintiff did not prevent performance by the defendant of his covenants nor release him from his obligation to perform.

The owner of a theatre leased it to one who covenanted that he would entirely equip it with carpets and other theatrical furniture and equipment, which, as soon as placed, should become the property of the owner "and part of the property hereby demised," that he would see that the theatre at all times was kept fully furnished and equipped in a first class manner, and, at the expiration of the lease, would peaceably yield up to the owner the premises and all erections and additions made to or upon the same, and all equipment and furnishings, in good repair and condition in all respects, reasonable use and wear, and damage by fire and other unavoidable casualties excepted. The lessee, after fully equipping the theatre, sublet the premises for less than his term to one who covenanted, among other things, to keep the carpets and other fittings, furniture and equipment in good and first class repair, promptly to make all needful repairs, promptly to replace all articles lost, destroyed, worn or unfit, "such articles so furnished by it to be the property of the" sublessor "and a part of the demised premises." The sublessee assigned his interests to one who

occupied under the sublease.    Before the termination of the sublease, the sub-lessor brought a suit in equity to enforce specific performance by the assignee of the sublessee of his covenants.    A master's report was not filed until after the term of the sublease had ended and when the premises were in the possession of a new sublessee.    It appeared that the defendant had failed to replace carpets and other things valued at about $4,892.66, but that the plaintiff's leasehold interest had not been impaired by any of the acts or omissions of the defendant. A final decree was entered awarding damages to the plaintiff in the sum above mentioned with interest.    The defendant appealed.    *Held,* that the damages were awarded properly and that the decree should be affirmed.

BILL IN EQUITY, begun by a writ in trustee process dated July 9, 1918, for specific performance of certain covenants in a sublease by the plaintiff to the defendant, described in the opinion, and for damages.

The suit was referred to and heard by two successive masters, in circumstances described in the opinion.    It was alleged in the bill, admitted in the answer and found by the second master that the plaintiff, in his lease from the owners of the property, covenanted in substance that he would entirely equip the theatre, including therein all carpets, asbestos fire curtain, draperies, scenery, properties, and office furniture, and all other articles and things needed completely to furnish it in a first class manner, all such articles to become the property of the owners as soon as they were placed in the theatre, and part of the property thereby demised, but that the plaintiff should have the right to make from time to time such changes in the equipment and furnishings as he should see fit, by additions, substitutions or otherwise, provided the theatre was at all times kept fully furnished and equipped in a first class manner; that the theatre should be constructed, finished and equipped in a first class manner throughout, and in accordance with the best usage and custom of the day relating thereto; that, when the theatre had been furnished, a duplicate inventory should be made of its equipment and furnishings, one copy of which should be given to the owners, and the other copy retained by the plaintiff, and that from time to time if the plaintiff should make changes in the furnishings, a complete list of the articles substituted should be furnished the owners; that at the expiration of the lease he would peaceably yield up to the owners the premises and all erections and additions made to or upon the same, and all equipment and furnishings, in good repair and condition in all respects, reasonable use and wear and damage by fire and other unavoidable casualties excepted.

It likewise was alleged in the bill, admitted in the answer and found by the second master that the sublease of the plaintiff to the defendant, besides containing the covenants described in the opinion, specifically stated that it was subject to the lease of the owners to the plaintiff. The second master moreover found that at the time of the commencement of the occupation by the defendant under the lease from the plaintiff to the defendant, January 1, 1913, the theatre building was practically new and newly furnished, fitted and equipped, having been used only twenty-six weeks.

The proceedings in the suit in the Superior Court and other material facts are described in the opinion.

Among other exceptions by the defendant to the second master's report were exceptions to refusals of the master to rule as follows:

"1. Under these circumstances the plaintiff is not entitled to damages for the defendant's failure to carry out requirements contained in the master's report."

"5. Damages must be assessed as of the date of the writ."

"6. There was no such damage."

"10. The measure of damages, assuming that damages are recoverable, is not the replacement cost. It is the injury to the plaintiff. No evidence of such injury was introduced."

"14. If it appears from all the evidence that the plaintiff, in seeking to recover damages, had no intention of using the money that he might recover to make replacements and repairs, he cannot recover in equity."

The suit was heard upon exceptions of the defendant to the second master's report by *Lawton*, J., who on March 22, 1920, ruled that the exceptions should be overruled and that the plaintiff was "entitled to damages for non-replacement of carpets as of September 1, 1918, $4,673.66 and for other items as found by the master;" and by his order there were entered on April 26, 1920, an interlocutory decree overruling the exceptions to the master's report and confirming the report and a final decree directing the payment to the plaintiff within thirty days of $5,651.02 damages and interest, and $36.33 costs. The defendant appealed.

*R. S. Warner*, for the defendant.

*J. W. Pickering*, for the plaintiff, submitted a brief.

JENNEY, J. The plaintiff is lessee for twenty-one years from

March 31, 1911, of certain premises in Boston which include the building known as the St. James Theatre. The defendant was the assignee of a sublease of said theatre dated January 28, 1913, from the plaintiff to the Lorraine Amusement Company, and was in occupation of the premises on July 9, 1918, when this suit was brought. The sublease expired on August 31, 1918. No question is made as to the plaintiff's right to relief in equity. The sublease contained the following covenants on the part of the lessee:

"That it will at all times keep all and singular the inside and outside of said demised premises and every part thereof in good order and condition and in good and first class repair, inside and out in every respect throughout; that it will keep all carpets, fittings, fixtures, furniture, furnishings, properties and all articles of every nature belonging to the lessor or to the owners of the building in good and first class repair and condition and will make all needful repairs upon the same as required by defacement and will promptly replace with new articles of the same kind and of at least equal value and quality all that should become lost, destroyed, worn or unfit for use by reason of ill appearance, or otherwise, reasonable wear and tear excepted. All such articles so furnished by it to be the property of the lessor and a part of the demised premises."

"And the lessee agrees with the lessor that it will at the expiration of this lease peaceably yield up to the lessor the said premises and all erections and additions made to or upon the same and all equipment and furnishings (except booth, scenery and personal property of the lessee) and all other property in good repair and condition in all respects, damage by fire and unavoidable casualty excepted."

It is conceded that the defendant's liability on the covenants is the same as that of the sublessee. *Farrington* v. *Kimball,* 126 Mass. 313. *Bell* v. *American Protective League,* 163 Mass. 558, 561. *Peters* v. *Stone,* 193 Mass. 179.

The parties agreed that the suit should be sent to a master under a stipulation by which they waived "all rights to file objections and exceptions to his report, and that proper decrees may be entered confirming the report, and for relief in accordance" therewith; and the stipulation also provided ". . . the

parties further agree to waive, and to [*sic*] hereby waive all rights of appeal from any interlocutory decree or final decree that may be entered."

An interlocutory decree was entered in accordance with the stipulation of the parties, directing, among other things which are not now material, the master to find and report "what specific relief, if any, the plaintiff is entitled by way of repairs to the theatre premises and the several portions thereof, internal and external, and to the carpets, chairs, furniture, fixtures, fittings and equipment of said theatre; and by way of replacing, restoring or making restitution of any carpets, chairs, furniture, fixtures, fittings and equipment of said theatre, or otherwise; and whether the defendant is entitled to remove any and what articles or 'properties,' so called, furnished by defendant, or whether plaintiff is entitled to an injunction restraining such removal; and to determine and report to this court, in separate items, what sums in damages would be just and adequate to compensate the plaintiff, as alternative relief, instead of the several items of specific relief, if any, to which the master may find the plaintiff entitled." See *Bradley* v. *Borden,* 223 Mass. 575, 587; *Kimberly* v. *Arms,* 129 U. S. 512.

The master found and reported, as stated in full in the footnote,* that certain carpets, draperies and picture frames should

---

* "(1) 'That the defendant must replace the carpets upon the balcony lobby and the lower lobby floors and the different exit landings and several stairways, also in the balcony between the rows of seats and the different aisles, in the ladies' reception room and the several boxes and cover the two seats in the smoking room with carpet of a material and texture similar to that which was formerly in place.'

"(2) 'I find that the draperies should be cleansed by the defendant and those that are missing be replaced by new ones of character similar to the original.'"

"(7) 'When the defendant took possession under the lease, there was several oak picture frames hanging in the lobby which were missing at the time of the hearing. . . . It is a part of my present finding that they be restored as they originally were in accordance with the agreement of the parties.'"

"(9) 'I also direct that the defendant restore to its former condition the ticket office, which has been altered to some extent to suit the purposes of the defendant.'"

be replaced, some draperies cleaned, and the ticket office restored to its former condition. In all other respects the findings of the master have been complied with. On August 25, 1918, at the close of the hearings the master announced what his findings would be. Within a few days after receiving notice of the master's oral findings, the defendant sent men to the theatre to do the work embraced therein, and ordered its employees to contract for carpets. A supplementary hearing was held on August 28, 1918, and the plaintiff in the master's presence orally notified the defendant's officers that it would not be permitted to enter the theatre for the purpose of doing any work after August 31, 1918, which was the date of the expiration of its sublease. When this notice was given, it was not possible to carry out the requirements of the findings which the master had orally announced, so as to perform them before August 31, 1918. The master's report, which was in accordance with his oral statement, was filed on September 4, 1918. On the next day the plaintiff instructed the person then in control of the premises in behalf of the Trimount Theatres, Incorporated, which was then in possession of the premises under a new sublease which took effect on September 1,1918, not to permit the defendant's employees to enter on the premises.

Thereafter, on May 31, 1919, the case was referred to a second master under a decree directing him to "determine and report to the court whether any damages, and, if so, what damages with the amounts thereof separately stated in detail, have been sustained by the plaintiff by reason of any failure or failures of the defendant to make the several repairs, replacements and restorations, or any thereof, or to do any of the things which are found to be incumbent on the defendant by the terms of the master's report . . . together with such facts and questions of law as either party may request." No appeal was taken from this interlocutory decree.

The only particulars in which the second master found that the defendant had not complied with the requirements of the report of the first master and the damages caused thereby were:

1. The defendant had not wholly replaced the carpet referred to therein; and the plaintiff's damage because of such non-replacement is $4,673.66, the fair market value of such carpet on Sep-

tember 1, 1918, the time of the expiration of the defendant's sublease.

2. Four pairs of draperies were missing when the sublease expired, the defendant having removed them, and the damage in consequence thereof is assessed at $204.

3. The plaintiff is entitled to $5 as damages because of the picture frames hereinbefore referred to.

4. The plaintiff is also entitled to receive $10 as damages caused by changes made in the ticket office by the defendant.

.5. The value of the plaintiff's leasehold interest was not impaired by any of the acts or omissions of the defendant.

On the coming in of this report, the plaintiff's exceptions thereto were waived, those of the defendant overruled, and the report was confirmed. Thereafter a decree was entered ordering the defendant to pay to the plaintiff $5,651.02 and costs. The defendant appealed from these decrees. Apparently the sum stated in the final decree as damages was fixed as of the date of the termination of the sublease.

The defendant urges that his appeal ought to be sustained and the decree reversed for four reasons. All of his exceptions to the second report except so far as supporting these, must be considered as waived. The reasons are as follows:

1. It is said that the determination of the first master was complete and final, and that under the stipulation, the parties had agreed to accept his findings, whatever they might be. In support of this proposition, the case of *Holyoke Machine Co.* v. *Franklin Paper Co.* 97 Mass. 150, is cited. In that case arbitrators who had been authorized to determine whether there had been any damages caused by a breach of a contract, and if so, what damages if any had been so caused, found that there had been a breach of the contract, and that the plaintiff was not entitled to damages "for reasons which were made apparent to the arbitrators." It was held that the plaintiff was not entitled to have the award set aside because of the failure to give damages. The arbitrators had performed their full duty and reported on all the issues submitted to them. Here the first master did not fully comply with the terms of the interlocutory decree under which he acted and which directed him to determine and report in separate items what sums in damages would justly and adequately compensate the

plaintiff as alternative relief, instead of specific performance. When the master failed in this duty, the court properly referred the suit to a second master for the purpose of supplying his omission. *Gay Manuf. Co.* v. *Camp,* 15 C. C. A. 226. No appeal was taken from the decree so empowering the second master. The first objection is untenable.

2. It is next urged that the report of the first master should have been discharged because it was not final and complete, inasmuch as it did not comply with all the requirements of the decree of reference. The short answer to this contention is, that the report was that of a master and was not strictly an award of an arbitrator. The tribunal, although of the parties' own selection, was necessarily "governed in its conduct by the ordinary rules applicable to the administration of justice in tribunals established by law." *Kimberly* v. *Arms, supra,* at page 524. So far as appears, no objection or exception was taken to the first report or motion made to recommit or discharge it. In the course of his argument, the defendant's counsel expressly stated that he did not claim that the master's errors of law, if any there were therein, were open to him. After entry of a final decree, assuming that the power now exists so to do, on this record the first report ought not to be discharged. See *DeVeer* v. *Pierson,* 222 Mass. 167, 175; *Pickard* v. *Clancy,* 225 Mass. 89, 94.

3. "The plaintiff forgave or prevented performance." Suit was instituted but a short time before the termination of the defendant's sublease. The first master's oral announcement of his proposed findings did not constitute any part of his report. He could have heard further evidence, or without such evidence could have modified his report either in form or in substance before filing it. *New York Bank Note Co.* v. *Kidder Press Manuf. Co.* 192 Mass. 391, 405. *Bon* v. *Graves,* 216 Mass. 440, 445. *Hayes* v. *Penn Mutual Life Ins. Co.* 222 Mass. 382, 385. The master's report not having been made until the defendant's leasehold right in the premises had ceased, the plaintiff was not bound to permit further occupancy of the premises to cure the wrongful omission to perform the lease. Indeed the plaintiff could not have given the defendant such right, as the second report shows that the theatre was then in possession of a new sublessee whose sublease had taken effect on September 1, 1918. Moreover, a

notice to the new sublessee was beyond the plaintiff's authority, and of no effect. The second master, however, finds that the new sublessee, notwithstanding said notice, was willing to admit the defendant's employees into the premises for the purpose of working therein, and did admit them for that purpose from time to time after the theatre was in its possession. The plaintiff did not prevent performance of the terms of the lease and certainly did not release the defendant from its obligation. The bill sought to compel specific performance of the covenants in the lease, or in the alternative to secure an assessment of damages. No objection as to the existence of a plain, adequate and complete remedy at law was made.

4. The remaining objection of the defendant is as to the measure of damages. The plaintiff's rights were fixed by the terms of the covenants in his sublease and not limited because he was not similarly bound to his lessor. While the obligation of the defendant was to perform certain definite things, it says that it should not pay the expense of this performance except as to the changes in the box office, because, although its duty was to keep the covenants, the failure so to do did not impair the rental value of the property nor injure the reversion. The covenant had been broken before suit was brought and there was then a right of action.

The defendant's complaint as to the damages required to be paid by the final decree is not founded upon any objection, exception, or argument that there was error in the date with reference to which they were assessed. It does not object because they were determined as of the time when its sublease terminated, instead of the date when the bill was filed. The interval between these times was so short that it well might regard as negligible the error as to this, if one there were; hence this is not considered. See *Cooke* v. *England*, 27 Md. 14.

The defendant's claim as to damages broadly stated is, — the plaintiff is not entitled to any substantial amount because, if it had performed its covenant under discussion, there would have been a new carpet laid, title to which at once would have been in the plaintiff's lessor, and the use of which would have been in the new subtenant. Assuming that this result would have followed, if this claim is well founded, the defendant escapes all

substantial liability for the breach of a covenant requiring a considerable outlay on its part.

It was declared by Gray, C. J., in *Watriss* v. *Cambridge National Bank,* 130 Mass. 343, at page 345: "As a general rule, the measure of damages for the breach of a lessee's covenant to keep in repair, and to surrender the demised premises at the end of the term in as good order and condition as they are in at the beginning of it, is the sum it would cost to repair the premises and put them in the condition they ought to be in." The defendant was bound to make replacement "with new articles of the same kind and of at least equal value and quality all that should become lost, destroyed, worn or unfit for use by reason of ill appearance, or otherwise, reasonable wear and tear excepted," without reference to the end of its term. This covenant is not like those where the lessee obligates himself to repair, and where his covenant can be performed at any time during the term, and where if a plaintiff sues during the currency of the lease he gets only damages to the reversion. *Watriss* v. *Cambridge National Bank, supra,* was cited with approval in *Weeks* v. *Wilhelm-Dexter Co.* 220 Mass. 589. In addition to the cases cited in the first of these cases, see *Morgan* v. *Hardy,* 17 Q. B. D. 770; *Joyner* v. *Weeks,* [1891] 2 Q. B. 31; *Henderson* v. *Thorn,* [1893] 2 Q. B. 164; *Conquest* v. *Ebbetts,* [1896] App. Cas. 490; *Willoughby* v. *Atkinson Furnishing Co.* 93 Maine, 185; *Appleton* v. *Marx,* 191 N. Y. 81; *Burke* v. *Pierce,* 27 C. C. A. 462. As it was found that the work could not be completed until after the expiration of the term of the sublease, the defendant was not entitled to any deduction, for the reason that if it had fulfilled its obligation, it would have been entitled to have used and hence have received benefit from the performance of its covenant.

It follows that the plaintiff was entitled to the relief given by the interlocutory and final decrees appealed from, and they must be affirmed, with costs.

*Ordered accordingly.*