CASE 75—PETITION ORDINARY—April 25.

# Cincinnati Southern Railway Co. v. Hudson,

### APPEAL FROM KENTON CIRCUIT COURT.

1. RAILROADS—BREACH OF CONTRACT TO MAKE CROSSING—MEASURE OF DAMAGES.—In an action against a railroad company for the breach of a contract to provide the plaintiff with "a good crossing" in consideration of his conveying to it a strip of land through his farm for the construction of its road, the measure of damages is what it will reasonably cost to make a good crossing at the point named in the contract, and such damages as may have directly resulted up to the time of trial from the inconvenience of not having the crossing.

2. SAME—PARTIES TO ACTIONS.—The fact that the plaintiff has parted with the fee in his land, without reserving the right to prosecute this suit, and now has only a life estate, presents no defense to the action. The right of action did not pass to the plaintiff's alienee any more than it would have done if the promise had been to pay money, the construction of the crossing being a part of the consideration for the conveyance to the company.

SIMRALL & MACK AND COLLINS & FINLEY FOR APPELLANT.

1. An agreement by a railroad company with the owner of land to construct a crossing is a covenant running with the land and passes by a conveyance of the fee, and the owner of the fee only can bring an action for breach of the contract. (2 Washburne on Real Property, p. 263; Ky. Cent. R. R. Co. v. Kenney, 82 Ky., 154; Easter v. L. M. R. R. Co., 14 Ohio St., 48; 1 Smith's Leading Cases, 141; Coke on Littleton, 18 Sec.,12; 2 Bl. Com. 241; Leake's Digest of Land Law, 62; Gent v. Harrison, Johnson, 517; Bateman v. Hotchkiss, 31 Beavan, 486.)

2. In actions ex contractu the measure of damages is the amount that it will cost to carry out defendant's agreement. (Sedgwick on Measure of Damages 210, 344; Wood's Mayne on Damages, sec. 12; I. B. & W. Ry. Co. v. Koons, 5 North-eastern Rep., 549; Logansport, C. & S. W. Ry. v. Wray, 52 Ind., 578; Taylor v. North Pacific R. R. Co., 56 Cal, 317; Lawton v. Fitchburg, R. R., 8 Cushing, 230.)

HALLAM & MYERS FOR APPELLEE.

No brief in recor

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

May 19, 1875, the appellee, M. J. Hudson, was the owner in fee of a valuable farm of 220 acres, lying upon the Covington and Lexington turnpike. The dwelling thereon was about seventy yards west of the turnpike, but connected with it by a passway leading directly to it. At the time named the appellee, in consideration, as the deed recites, of the benefit to be derived by the building of the road and of one dollar in hand paid, conveyed to the trustees of the Cincinnati Southern Railway a strip of land through his farm for the construction of its road. It was then contemplated that the railroad would, for the most part, occupy the site of the turnpike, therefore necessitating a change of it so that it would, as to the appellee's land, be entirely upon the east side of the railroad, thus bringing the latter between the dwelling and the turnpike.

The deed therefore provided: "It is a part of the consideration of this deed that grantees are not to occupy "more of the yard in front of grantor's house than is "necessary to construct said railway, and that no more "dirt shall be taken from said yard than is necessary to "take in grading said railway in front of said yard; *and* "*that the grantors are to be provided with a good crossing* "*on said railway at or near the present location of their* "*road.*"

In building the railroad, it was necessary to make a cut in front of appellee's premises about one thousand feet long. It, at the point where his passway had formerly entered the turnpike and in front of his house, was over fourteen feet deep. It was, therefore, deemed impossible

to make, in the language of the deed, "a good crossing" at that point at the grade of the railroad, because a deep cut would have been necessary leading to it, rendering the crossing unsafe. One could not be made north of it, and to obviate the trouble, as the appellants claim, they changed their purpose of having the turnpike entirely upon the east side of the railroad along appellant's premises, and located it so that it crossed the railroad at the south end of the cut, thus bringing it next to the appellee's land, about three hundred feet south of his house. This enabled him, in going from his house, to reach the turnpike at that distance from his house without crossing the railroad, and in going south, therefore, he did not have to cross the railroad at all, and but once in going north, near the point where he thus reached the railroad, and after getting on the turnpike. It is shown that this was a good crossing. The appellee used this outlet from his premises from 1876 until July 20, 1883, when he brought this action for a breach of the contract, claiming that the appellants had failed to provide him a crossing as required by his deed. They, upon the other hand, asserted that they had done so by the change in locating the turnpike, and that the way thus furnished the appellant of crossing the railroad was as "near" the location of his old road leading to the turnpike as was reasonably practicable, and was a compliance with the contract.

Although the appellee used this approach for several years, yet it appears he never accepted it as a compliance with the stipulation in the deed. It was the only way he had of reaching the turnpike. He used it *ex necessitate*. Moreover, the jury, by rendering a verdict in damages

for the appellee, in effect found that there had been no compliance in this respect with the contract.    It is shown that a bridge can be built over the railroad at or near the point where his old road ran leading to the turnpike, thus furnishing him a crossing at this point, and this he is demanding, but it will cost eleven or twelve hundred dollars.

We think it plain that when the contract was made the parties understood that the appellee was to be furnished with a good crossing of some character in front of his dwelling and the improvements connected therewith, to be located at or near the place where the passway then leading to the turnpike passed that point.   This being so, the appellees can not be excused from performance by reason of the cost of compliance.

The fact that the appellee in 1885, or about two years after the bringing of this action, conveyed away the fee in the land without reserving the right to prosecute this suit, and only has a life estate in it, presents no defense to the action.   The construction of the crossing was a part of the consideration for the conveyance, and being so, the appellee has as much right to sue for and recover on account of it as he would have if it had been a promise to pay a thousand dollars.   The right of action did not pass to his alienee any more than it would in the case last supposed.

The material question presented is the proper measure of damages.

The action is *ex contractu* and not in tort.

Upon the trial the appellee was, over the objection of the appellants, allowed to prove what diminution in the

value of his tract of land resulted from the failure to furnish the crossing; and the measure of damages furnished to the jury by the court in its instructions in case they found for the appellee was "the difference in value, if "any, in the value of the plaintiff's interest in said land "with the old road, and its reduced value, if any, as the "actual result from the refusal, if any, of the defendant "to provide a good crossing, at or as near as practicable "at the date of the deed, to the location of the plaintiff's "road, as of June 2, 1885, the date of the deed."

A verdict of four thousand dollars for the appellee in damages resulted from this evidence and view of the law.

The testimony should not have been admitted, nor the jury thus instructed. It is not an action for an injury to the land. The appellee should not be allowed to recover more than he would have had if the appellants had complied with their contract.

The damages in such an action should be in proportion to the benefit he would have received from its performance. What is necessary to make him whole? Clearly what it would have cost to make a good crossing at the point named in the deed, and such damage as may have resulted up to the time of the trial, directly from the inconvenience of not having it. To allow more would give appellee more than he would have had if the appellants had complied with their promise; while the damages indicated will place the parties exactly where they would have been if the crossing had been constructed. This will make good the contract. It will make the appellee whole. It meets the actual loss.

If the view adopted by the lower court in admitting the

evidence above named, and in its instructions, were the true one, then it would result if the appellee's farm had contained a thousand acres he would have been entitled to recover twenty thousand dollars, but if he had been the owner of but one acre, then his recovery would have been limited to twenty dollars.

In Lawton v. The Fitchburg Railroad Company, 8 Cushing, 230, a railroad company in consideration of an amicable adjustment of damages between it and the owner of land taken for its road agreed with him as a part of the consideration to fence the land taken. It failed to do so and was sued by him for a breach of the contract. It was held that the measure of damages was the sum which it would cost to erect the fencing according to the agreement.

In the case now before us the building of the crossing at the point fixed by the contract was a part of the consideration for it. Its fair cost was the amount of that much of the consideration. The appellee desired this crossing. If the appellants had not contracted to make it, it is presumable he would have demanded of them the sum necessary to make it as a part of the consideration for the deed.

In Taylor v. North Pacific Coast Railroad Company, 56 Cal., 317, the railroad company in consideration of the grant of a right of way through the plaintiff's land, agreed to build for him a wagon road and to fence each side of the way. In an action for a breach of this agreement, it was held that he was entitled to recover what it would reasonably cost to construct the road and fence.

Other cases may be found to the same purport. Logans-

port, &c., Railway Company v. Wray, 52 Ind., 578; St. Louis, &c., Railroad Company v. Lurton, etc., 72 Ill., 118.

The judgment is reversed for the errors indicated, and cause remanded for a new trial in conformity to this opinion.