## Big Sandy Railway Company v. Rice's Adm'r.

(Decided February 6, 1912.)

### Appeal from Floyd Circuit Court.

1. Railroads—Grade Crossing—Contract to Provide and Maintain— Damages—Evidence.—In an action for damages by the owner of land against a railroad company for violating its contract to construct and maintain a grade crossing, evidence examined and held to support the finding of the jury to the effect that the contract had been violated, and to justify the amount of damages awarded.

2. Same—Measure of Damages.—For a failure to provide and maintain a grade crossing, the measure of damages is what it will reasonably cost to construct and maintain such crossing, and such damages as may have directly resulted up to the time of trial, from the inconvenience of not having the crossing.

WALTER S. HARKINS, F. T. D. WALLACE, JOSEPH D. HARKINS and WORTHINGTON, COCHRAN & BROWNING for appellant.

JAMES GOBLE and W. H. MAY for appellee.

Opinion of the·Court by William Rogers Clay, Commissioner—Affirming.

Isaac W. Vanderpool was the owner of a tract of land in Floyd county, Kentucky, on the west side of the Big Sandy River, situated on what is known as the Joe Auxier Branch, which is a small stream about one mile long emptying into the river. On September 4, 1902, Vanderpool and wife sold and conveyed to the Big Sandy Railway Company a right of way through his land for the sum of $420.00, which was paid in cash. Among other stipulations, the deed contained the following:

"The grantee to construct and maintain one grade crossing for use of grantor, heirs and vendees."

On January 15, 1903, Vanderpool and wife sold and conveyed the land to Samuel M. Rice. The consideration was $1,200.00, and $50.00 payable annually to Jane Auxier, widow of Joseph K. Auxier, during her life. ·

On August 4, 1904, Samuel M. Rice brought this action to compel the Big Sandy Railway Company to construct the grade ·crossing in conformity with its agreement, and to recover damages for its failure to do so up to that time. Pending the action, Rice died, and F. H. Morell qualified as his administrator, and the action was revived in his name. Thereupon, an amended petition was filed, abandoning that part of the action seeking specific performance, and asking damages in the sum of $1,275.00. On the filing of this amendment, the case was transferred to the ordinary docket to be tried by a jury. Afterwards F. H. Morell, the administrator died, and the action was then revived in the name of Frank Rice, the son of Samuel M. Rice, who had theretofore qualified as administrator of his father.

The railway company defended on the ground that it had complied with its undertaking and constructed the grade crossing.

The jury awarded plaintiff damages in the sum of $800.00, and the railway company appeals. ·

The evidence for plaintiff is to the effect that when Vanderpool sold the right of way, he had a haulway from the river to his dwelling, and another way leading from his dwelling to East Point, that was suitable for travel. Both of these ways were destroyed by the railway company. The latter did not construct a grade crossing either for Vanderpool or his vendee Rice.

Since the road has been graded, there has been no outlet from the farm to any public road, church or other place, except over the river bank which is very rough and steep, and down the railway right of way to the town of East Point. Plaintiff's family were forbidden by the railway company to travel its right of way. It would cost about a thousand dollars to construct a grade crossing, and that the inconvenience of doing without it had depreciated in value of the farm.

According to the evidence for the railway company, it did construct a grade crossing and was maintaining it at the time of the trial. On cross-examinations, however, it developed that the crossing was one they had constructed on the land of a man by the name of Ford who had purchased a part of the Vanderpool farm, and could not be used by the owners of the Rice land. Of course, if after the execution of the deed from Vanderpool to the railway company, Vanderpool had sold his land in two tracts, one to Ford and the other to Rice, there might be some merit in the railway company's contention that it had complied with its undertaking by constructing the Ford crossing. But no such state of facts is presented. Ford purchased from Vanderpool several years before the transaction herein involved took place. The covenant in the deed contemplated a grade crossing somewhere on the land then owned by Vanderpool, and was for the benefit not only of Vanderpool but of any subsequent owner of that particular land. The construction of the Ford crossing, therefore, was in no sense a compliance with the contract, and no just complaint can arise because of the finding of the jury on this question.

The court in its instructions submitted to the jury the question whether or not the railway company failed to construct the crossing, and told them that the measure of damages was what it would reasonably cost to make and maintain the crossing, and such further damages as may have directly resulted to the time of trial from the inconvenience of not having the crossing. This instruction is correct, and follows substantially the rule laid down in the cases of Cincinnati Southern Railroad Co. v. Hudson, 88 Ky. 480, and Willson v. Illinois Central Railway Company, 29 Ky. Law Rep. 172.

As plaintiff's witnesses testified that it would cost about $1,000.00 to construct the crossing, and one of the witnesses placed it as high as $1,500.00, and as there was

necessarily great inconvenience in doing without the crossing, we are unable to say that the damages awarded were excessive.

Judgment affirmed.