## Witt, et al. v. Louisville & Nashville Railroad Company.

(Decided March 24, 1925.)

### Appeal from Estill Circuit Court.

1. Limitation of Actions—Action on Contract with Railroad in 1889 Barred.—Action to compel railroad to build fences under contract executed in 1889 held barred by limitation.

2. Railroads—Grantee of Farm Held Not to have Right to Compel Railroad to Maintain Farm Crossing.—Where railroad's grantor had contracted to maintain two farm crossings, and railroad had unconditionally purchased additional right of way along tracks, across which one of crossings was located, to raise grade and construct double track, subsequent grantee of farm held not to have right to compel maintenance of crossing, there being one crossing available especially since grantee had purchased farm without crossing, and any action for breach of contract to maintain it accrued only to the then owner.

3. Covenants—Broken Covenant Does Not Pass with Title.—When covenant is broken, it becomes chose in action, and does not pass with transfer of title, except by express assignment.

4. Railroads—Right to Compel Carrier to Maintain Station on Farm, Not Established.—Right to compel carrier to maintain flag station on farm, as provided in unrecorded contract with carrier's predecessor, held not established against carrier's claim as innocent purchaser, in absence of any proof of actual notice of contract, since flag station may be established for carrier's benefit, and is therefore not necessarily constructive notice that its maintenance is appurtenant to land.

RIDDELL & SHUMATE for appellants.

R. R. FRIEND, HUNT, NORTHCUTT & BUSH and WOODWARD, WARFIELD & DAWSON for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Affirming.

Appellants, O. W. Witt and others, own a farm in Estill county, Kentucky, containing something over 400 acres. The tracks of appellee, Louisville & Nashville Railroad Company, traverse that farm. They sued to compel it to re-establish a farm crossing and a station on the farm which they alleged it had wrongfully discontinued and to compel it to erect certain fences. Alternatively they pleaded that, in the event they were not entitled to that relief, they were entitled to damages in the sum of $5,000.00. Appellants had purchased the farm

from S. P. Crawford, who conveyed it to them March 26, 1919. Crawford had purchased the farm from R. P. Wagers, who conveyed it to him December 31, 1912. Appellants' right to the relief sought in their petition was founded upon a contract made by R. P. Wagers while she owned the tract of land with the Richmond, Nicholasville, Irvine and Beattyville Railroad Company at the time that company procured the right of way through it upon which appellee's railroad tracks are now maintained. Appellee interposed many defenses to the cause of action pleaded in plaintiffs' petition, by all of which appellants' right to any relief was contested. The various defenses, noted hereinafter in the discussion of the questions presented, were appropriately pleaded. The chancellor dismissed their petition and they appeal.

The record discloses the following facts:

After the organization of the Richmond, Nicholasville, Irvine and Beattyville Railroad Company, which will be hereinafter called the R. N. I. & B. Ry. Company, it instituted condemnation proceedings in the Estill county court to procure a right of way across the farm then owned by R. P. Wagers and her children, who were the surviving widow and heirs of her husband, who had died intestate, the owner of it, and it is the same farm now owned by appellants. So far as the records of the county court in the condemnation proceedings show, the Wagers heirs were awarded $750.00 as damages in that proceeding. That sum was paid by the R. N. I. & B. Ry. Company and a commissioner appointed for the purpose conveyed to it the right of way across the farm. The deed so made to it contained no reservations or stipulations as to farm crossings or a railroad station on the farm or as to fencing along the right of way. That deed was immediately recorded and no appeal was ever taken from the orders of the Estill county court settling the rights of the parties in the condemnation proceedings. Later the R. N. I. & B. Ry. Company became insolvent, and in an action brought in the circuit court of the United States for the district of Kentucky against it to foreclose a mortgage upon all of its property, a decree was entered ordering a sale of all of its properties, including its right of way and tracks. Before the institution of that action it had taken possession of the right of way across the Wagers farm and had constructed its line of railroad thereon. The road so constructed had been in operation for some time. The sale directed to be made in the action

above was had October 11, 1897, and D. A. Shannahan, H. B. Hanger and J. M. Walker purchased the properties of the railroad company so sold, including the right of way mentioned and the tracks thereon. The purchasers at the sale, with the approval of the court, assigned their bid to Adolph Segal. He in turn, with like approval, assigned his bid to the Louisville & Southwestern Railroad Company. The latter company defaulted in the payment of the bonds assumed under its purchase, and in 1898 a decree was entered directing another sale of the property. At the second sale held May 1, 1899, the property was purchased by Robert Cochran, trustee, who later, with the approval of the court, transferred his bid to the Louisville & Atlantic Railroad Company. The latter company met its obligations under the purchase, and under orders of the court a deed was made to it for all of the properties of the R. N. I. & B. Ry. Company, including the right of way across the Wagers farm, now owned by appellants, and the tracks thereon. On November 1, 1909, the Louisville & Atlantic Railroad Company, by deed of that date, conveyed all the property purchased by it, as above indicated, to appellee, Louisville & Nashville Railroad Company.

Beginning with the deed to the R. N. I. & B. Ry. Company for the right of way and running through all the records by and through which the title of that right of way eventually came to be owned by appellee (the history of which is given above), no mention was made of and no stipulation contained in any of them required that any crossings be maintained or that a station be established and maintained or that any fencing be erected as a part of the obligations assumed by any of the holders of the right of way across the farm now owned by appellants.

Appellees base their sole right to the relief sought by them upon an alleged contract entered into and reduced to writing and signed by Mrs. R. P. Wagers for herself and children, of the one part, and the R. N. I. & B. Ry. Company of the other part. There was filed with the depositions for appellants what purported to be a copy of that written agreement. The copy was typewritten even to the names of the parties who signed it. The evidence for appellants tends to establish that it is a copy of the original agreement. It is extremely doubtful whether or not under the proof introduced the alleged copy can properly be considered as evidence in the case,

because of the failure to account for the nonproduction of the original. However, under the particular facts of this case, we deem it unnecessary to determine that question. No pretense is made that the contract was ever acknowledged by either of the parties to it or that it ever was recorded. According to the testimony Mrs. Wagers kept the copy as long as she owned the farm, delivered it to Crawford when she conveyed the farm to him, and he in turn delivered it to appellants when he conveyed the farm to them.

According to the terms of the copy of the agreement, the R. N. I. & B. Ry. Company agreed to erect and maintain north of the right of way in question necessary fencing; agreed to establish and maintain two farm crossings, and to establish and maintain a station on the farm at a point designated. No fencing appears ever to have been erected by the R. N. I. & B. Ry. Company or any of its successors in title under the agreement. However, the proof establishes that it did construct two farm crossings and established and maintained a flag station on the farm.

The proof for appellants tends to establish that the contract was made between Mrs. Wagers and the R. N. I. & B. Ry. Company in compromise settlement of the questions in controversy between them in the condemnation proceedings; and that upon the execution of the contract no exceptions were filed to the report of the commissioner awarding her $750.00 damages on account of the taking of her land for the right of way. Appellants contend that the terms of the agreement evidenced by the writing and the railroad company's obligations under it became appurtenances to and ran with the title of the land, and that they have succeeded to the benefits and appellee has succeeded to the obligations under the contract. Appellee opposes that contention and takes the position that it was an innocent purchaser for value without notice and consequently is not bound upon any of the obligations assumed by the R. N. I. & B. Ry. Company under the contract above.

As to appellants' right to compel appellee to comply with the terms of the contract pleaded with reference to fencing of the right of way, it is sufficient to say that the contract pleaded was executed in 1889. The evidence discloses that no fencing was ever erected by any of appellee's predecessors in title under that contract. Any right to maintain an action for a breach of the contract

of 1889 with reference to fencing long since has been barred by limitation. The relative rights of the parties with reference to fencing along appellee's right of way are controlled by the provisions of the Kentucky Statutes on the question. This action, so far as it related to the question of fencing not having been predicated upon the statutory rights but upon the provisions of the contract pleaded, was barred by limitation and was properly dismissed by the chancellor.

With reference to that feature of the action pertaining to the discontinuance of one of the farm crossings over appellee's right of way, we find the following facts to be disclosed by the record: After appellee, L. & N. Railroad Company, became the owner of the right of way and railroad constructed thereon across the farm in question while Crawford, their immediate predecessor in title owned the farm now owned by appellants, it purchased from him and he by general warranty deed conveyed to it an additional right of way fifty feet in width parallel to the right of way obtained originally in the condemnation proceeding. The additional right of way was purchased in order that appellee might double track its railroad at that point and raise the grade very materially. The additional right of way so conveyed to it was along that part of its railroad tracks across which one of the farm crossings was located. The additional right of way was conveyed to appellee by Crawford unconditionally and no reservation of that farm crossing was reserved by him. The grade was raised and the new trackage constructed on the right of way so acquired while Crawford owned the farm. In the reconstruction of its road at that place the farm crossing, which had previously existed, was discontinued. Crawford owned the farm for some four or five years after the change in the grade and tracks was made and after the farm crossing at that point was discontinued. He then sold the farm to appellants. It is contended by appellee that, even if the existence of the farm crossing at that place when it purchased the right of way was sufficient to put it upon notice that the crossing had been established and had been maintained for the benefit of the farm so as to impose upon it the duty of continuing to maintain it, when it purchased the additional right of way unconditionally from the then owner of the farm, who reserved to himself no further right to a crossing at that place, the effect of the latter purchase was to extinguish the former

right to a crossing. Exactly the same question was presented to this court in McGurn v. L. & N. Railroad Company, 177 Ky. 835, and it was there held that the owner of a tract of land with an easement across a railroad track, who conveyed an additional right of way unconditionally and without the reservation of the easement across the newly conveyed tract of land, could not maintain an action for the obstruction of the old railroad crossing. In that case, as in the one now before us, the additional right of way was purchased to enable the railroad company to construct double tracks and raise the grade. In that case, as in this, another crossing was available by which the landowner might cross the railroad track to and from the lands owned by him lying on either side of the track. There, as here, the crossing obstructed and discontinued was perhaps more convenient than the one remaining. It is not contended for appellants that it is necessary to use the crossing in question to reach that part of their lands lying north of the railroad right of way. Another crossing on the farm is available.

The McGurn case, *supra,* was a much stronger one for the landowner than is this, because in that case the person who conveyed the additional right of way still owned the lands when the controversy arose and at the time the litigation was instituted and determined. Here, Crawford owned the land when he conveyed the additional right of way. The railroad company reconstructed its tracks, raised the grade some 26 feet and discontinued the crossing. Crawford owned the farm for some four or five years thereafter. He then sold it to appellants and when they purchased it there was then no crossing at the point where they now contend they are entitled to have one established. Consequently, it can not be said that they have been damaged by the discontinuance of the crossing because they purchased the farm after it had been discontinued. They purchased the farm without the railroad crossing. If we should permit them to compel the railroad company either to restore the crossing or to account to them for damages for its discontinuance, we would permit them to have the benefits of something they did not purchase.

It is well established in this jurisdiction that an unbroken covenant passes to subsequent transferees with the title, but when broken it automatically becomes a chose in action and does not pass with the transfer of

title but only by express assignment. (See Eli v. Trent, et al., 195 Ky. 26; Cincinnati Southern Ry. Co. v. Hudson, 88 Ky. 480; Payne, Agent v. Smith, 198 Ky. 564.) That being true with reference to an express covenant of warranty contained in the deed itself, it could hardly be maintained that the stipulations of an unrecorded contract would be given higher standing. From analogous reasoning, it would seem equally clear that if the agreement to maintain the crossing, which was never acknowledged and never recorded, could he held binding upon appellee upon the theory that the existence of the crossing at the time it took possession of the railroad right of way put it on notice that the crossing had been established and maintained pursuant to an agreement with the owner of the farm to do so, automatically upon the breach of the contract a cause of action arose in favor of the then owner of the farm which could not subsequently by implication be conveyed to a succeeding owner by a mere conveyance of the tract of land to him. For either of the foregoing reasons we conclude that the chancellor properly dismissed appellants' petition in so far as it related to the discontinuance of one of the farm crossings.

With reference to the appellants' alleged cause of action growing out of the discontinuance of the station upon the farm now owned by them, they contend that under the contract pleaded appellee, as the successor to the original grantee of the right of way, took it with the obligation to maintain the flag station on the farm and that, although the contract was not a recordable instrument, never having been acknowledged, and was not recorded, the fact that the station had been established and existed at the time appellee purchased the railroad put appellee upon notice that it was being maintained for the benefit of the owner of the farm; and that they, as the owners of the farm, have succeeded to the benefits of the contract made with the original landowners and that appellee has succeeded to the obligations imposed upon the original railroad company when the right of way was procured. Appellee contests that contention and claims to have been an innocent purchaser for value without notice. Appellants cite and rely on Forsythe, et al. v. Southern Railway in Kentucky, 113 S. W. 85. In that case it was held that a railroad company, purchasing the property of another railroad company at a time when a well marked roadway under a trestle under the roadbed existed, which had been used by the owner under the

original contract for the right of way, purchased with notice of the existence of the roadway and could not deprive the owner of the land of the use thereof. Appellant insists that the same rule applies to a railroad station. It does not seem to the court that the cases are analogous. A farm right of way or crossing, either grade, underpass or overhead, is never established for the benefit of a railroad company. They are established and maintained exclusively for the benefit of the landowner. Railroad companies are public service corporations. Stations established on railroad lines are established for the joint benefit of the railroad company and the public. They are not private institutions. The fact that a railroad station exists at a given place does not have the effect, as does the existence of a farm crossing, to give notice to a railroad company that it has been established and is being maintained for the private benefit of the owner of the land adjacent to it. To enable the owner of land to compel a railroad company to maintain a station as an appurtenance to and for the benefit of the land owned by him he must establish the right to do so under a contract so providing. The contract relied upon by appellants was executed in 1889. It was not a part of and was not incorporated into the deed whereby the right of way across the farm was conveyed to appellee's predecessor in title. R. P. Wagers, who claims to have made the contract, afterwards conveyed the land then owned by her to Crawford and Crawford conveyed to appellants. Neither of those deeds contained any reference to the railroad station or to the contract appellant claims to have had with appellee's predecessor in title with reference thereto. As has hereinbefore been indicated, none of the deeds in the chain of title by which appellees became the owner of the right of way across appellants' farm contains any reference to the contract by which appellants are claiming the right to compel appellee to maintain the station or to recover damages for its discontinuance. The contract was not a recordable instrument and was never recorded. Under these facts the court is of the opinion that the unacknowledged and unrecorded contract relied upon by appellants was insufficient to constitute the right to a station upon the farm of appellants an appurtenance to it which has run with the title. To establish that the covenant to maintain the station for the benefit of the farm attached to it as an appurtenance and has run with the title, the contract containing

the covenant never having been recorded so as to give constructive notice, it was incumbent upon appellants to establish by proof that at the time appellee purchased the railroad it had actual notice of the contract relied upon by them. This they wholly failed to do.

The court is of the opinion that appellants failed to manifest any right to recover under their petition herein and that the chancellor properly dismissed the same. Hence, the judgment is affirmed.