LAZARUS et al. v. LUDWIG.

(Supreme Court, Appellate Division, First Department. December 8, 1899.)

1. LANDLORD AND TENANT—IMPROVEMENTS—ORIGINAL CONDITION.

A lessee's liability to restore the demised premises in their original state at the end of his term, if required by the lessors under an agreement allowing him to make alterations, was not waived by the landlord's allowing him to remain in possession after end of his term under a lease from month to month, where it appeared that they notified him to comply with said agreement before his term expired, and also during the pendency of eviction proceedings against him.

2. SAME—VERDICT—EVIDENCE.

The testimony of an expert builder was sufficient to sustain a verdict for damages to demised premises because of a lessee's failure to restore them to their original state, although the expert had not examined the premises prior to the alterations made by the lessee.

3. SAME.

On an issue whether lessors had waived a lessee's liability to restore the demised premises to their original state at the end of the term, it was not error to exclude a lease from month to month, given after the termination of the tenancy, which contained no waiver of such liability.

Appeal from trial term, New York county.

Action by Sarah Lazarus and others against Bernhard J. Ludwig. From a judgment for plaintiffs, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

William Strauss, for appellant.
Nelson S. Spencer, for respondents.

BARRETT, J. On the 23d day of May, 1885, the plaintiffs and one Emma Lazarus leased to the defendant certain premises in the city of New York for a term expiring on the 1st day of May, 1895. Emma Lazarus died in the year 1887, leaving the plaintiffs her heirs at law. The case may therefore be conveniently treated by omitting further reference to her. The lease contains a covenant on the defendant's part not to make any alteration in the premises without the plaintiffs' written consent. In the year 1890, the plaintiffs, at the defendant's request, gave their consent to certain alterations which he proposed to make. This consent was so given

upon condition that the defendant restore the demised premises in
their original state, if required, at the expiration of the lease. The
alterations were made pursuant to this consent and upon this con-
dition, and the effect was that such alterations were so made upon
what amounted to a collateral agreement on the defendant's part
to restore the premises as indicated. The action is for a breach
of the latter agreement. The defense is, in substance, that the
plaintiffs waived the defendant's liability to restore under his
agreement; and the appellant points to several incidents which,
from his point of view, constitute the waiver. It appears that on
the 7th of February, 1895, the plaintiffs notified the defendant to
restore the premises to their original condition at the termination
of the lease. This notice was repeated upon the 19th of the same
month. When these notices were given the plaintiffs supposed that
the defendant's lease would necessarily terminate upon the 1st of
the next month (March), instead of the 1st of the following May.
This was because the plaintiffs themselves were lessees of one Van
Beuren, and their lease expired on the 1st of March. The defend-
ant in the sublease had taken his term from the plaintiffs, subject
to the procurement by the latter of a renewal from Van Beuren.
The notices were given upon the assumption that this renewal
could not be had. A little later, however, namely, on the 28th of
February, the plaintiffs notified the defendant that, as the then
present owner of the premises had neither renewed their lease nor
paid them the value of the building, they would not surrender the
premises on the 1st of March. The effect of this notice was to per-
mit the defendant, so far as the plaintiffs were concerned, to re-
main where he was under the sublease until the 1st day of May,
and he so remained. After the 1st of May, the defendant held
over, and the plaintiffs instituted summary proceedings against
him to recover possession of the premises. A warrant was issued
in these proceedings on the 19th day of June, 1895, but still the
defendant held on. Shortly before the warrant was issued, name-
ly, June 13, 1895, the plaintiffs executed an agreement leasing the
premises to the defendant from month to month, beginning June
1st, and providing that either party might terminate the agreement
upon notice to the other of five days. The plaintiffs supposed that
the defendant acknowledged this agreement as made on his part as
well, but they were undeceived when he repudiated it in the further
summary proceedings which they were subsequently compelled to
institute against him. The court held in these latter proceedings
that the supposed agreement in question of June 13, 1895, was not
binding upon the defendant, and the plaintiffs were consequently
compelled to proceed against him de novo, as one holding over un-
der an agreement providing for the duration of the term. In the
latter proceeding he was finally evicted in November, 1896. In the
previous March the plaintiffs notified the defendant that they elect-
ed to terminate the lease upon the 31st day of the same month, and
he was again required at once to restore the premises, under his
collateral agreement, to their original condition.

We see in all this nothing suggestive of the waiver which the

defendant claims. The plaintiffs distinctly notified him in February, 1895, that they required restoration "at the termination of his lease." The time of performance under that requirement was undoubtedly extended, but never waived. The defendant's obligation survived all the incidents subsequent to the termination of the original lease. So long as his occupancy continued under some, it matters not what, arrangement, it was reasonable that he should have the continuous benefit of the alteration. When, however, that occupancy terminated, it was equally reasonable that the plaintiffs should receive the premises back in their original condition. That was the clear understanding of the parties, as evidenced by all that happened. There was, in fact, no waiver, express or implied, on either side. There was simply an implication extending the time of performance until the appropriate occasion, namely, until the termination of the defendant's actual occupancy. When the defendant finally got out of the premises, without restoring them to their original condition, he at once became liable for the breach of his collateral agreement. We think, therefore, that the case on this head was properly disposed of by the learned trial justice.

The proof of damage was sufficient to sustain the verdict. It is true that it rests largely upon the testimony of an expert builder, and that the expert had not examined the premises prior to, or at the time of, the original alterations. We think, however, that his estimate of the cost of restoring the premises to their original condition was sufficiently connected with proof of that condition, and that he spoke from information given him of that proved condition as well as from present observation of what was patent with regard to the alterations. This is questioned, but a careful consideration of the evidence leads us to the conclusion that criticism on that head was for the jury.

It is also contended that the learned court should have admitted, at the defendant's request, the lease which the latter repudiated in the summary proceedings. But, as this lease was there held not to be binding upon the defendant, we can see no force in the appellant's present contention with regard to it. In our view of the main question, it was of no consequence what the general nature of the agreement was under which the defendant retained possession after the termination of his original tenancy. So long as such agreement contained no waiver of the collateral agreement to restore, it had no bearing upon the breach of that agreement. The supposed lease of June 13, 1895, contained no reference to the latter agreement, either express or fairly to be implied from its language.

We think, therefore, that the judgment appealed from was right, and should be affirmed, with costs. All concur.