MARY LINDSEY CORREA, NEE MARY K. LO, *v.* WAIAKEA MILL COMPANY.

No. 1715.

ERROR TO CIRCUIT COURT FOURTH CIRCUIT. HON. H. L. ROSS, JUDGE.

ARGUED JANUARY 7, 1927.          DECIDED JANUARY 31, 1927.

PERRY, C. J., BANKS AND PARSONS, JJ.

LIMITATION OF ACTIONS—*breach of contract.*

In an action for damages for breach of a contract to cultivate land, the statute of limitations bars recovery when the breach, if any, occurred more than six years prior to the institution of the action.

SAME—*suspension of running of statute.*

One of the general rules concerning limitations of actions is that time, when it has once commenced to run in any case, will not cease to do so by reason of any subsequent event which is not within the saving of the statute.

CONTRACTS—*construction*.

> Under a contract permitting and requiring a "planter" to culti-
> vate certain land subject under the law to homesteading until
> notified in writing by the commissioner of public lands that home-
> steaders are ready to take over the actual cultivation of the
> land, notice in writing from the commissioner "to cease cultiva-
> tion, except under arrangements with the homesteaders them-
> selves," on the lots in question "with the exception of those listed
> below which were reserved for other than homestead purposes or
> were not given out" (the lot in question not being among those
> excepted), is a sufficient notice that homesteaders are ready to
> take over the actual cultivation, is properly so understood by the
> planter and justifies the planter in ceasing cultivation.

OPINION OF THE COURT BY PERRY, C. J.

This is an action at law wherein the plaintiff claims of the defendant damages for breach of the performance of a certain contract entered into by the defendant with the commissioner of public lands of the Territory of Hawaii relating to the cultivation of sugar cane on certain lands at Waiakea on the Island of Hawaii.

On June 24, 1918, the President of the United States issued a proclamation reciting that "by reason of the existence of a state of war it is essential to the national security and defense, for the successful prosecution of the war, and for the support and maintenance of the Army and Navy, to secure an adequate supply of sugar and other food products in the United States, including the Territory of Hawaii," and finding that "it is essential in order to secure such adequate food supply to continue to the fullest extent possible the cultivation of all public lands in the Territory of Hawaii now under cultivation in sugar or other food products" and for these purposes authorizing the commissioner of public lands of this Territory, with the approval of the governor, "to enter into all necessary contracts with the lessees of any of said government lands, the leases of which have expired or which, while this proclamation is in force, will expire, or with any

other person, firm, or corporation, for the continued culti-
vation of said lands, until such time as the same shall be
occupied and cultivated by homesteaders." Pursuant
to this proclamation the commissioner of public lands
entered into the contract in question with the defendant.
That contract recited the ownership by the defendant of
the ahupuaa of Waiakea in the district of Hilo and the
fact that that land was then partly under cultivation in
sugar cane and was about to be opened for homesteading.
The defendant corporation, therein called the planter,
agreed, "in so far as may be practicable, to cultivate
and/or to replant in sugar cane the land in said tract
now or which has heretofore been under cultivation in
sugar cane; to continue to cultivate the sugar cane now
growing on all of such land * * * and to fertilize, strip
and otherwise cultivate to maturity and harvest the pres-
ent and any successive crops of sugar cane during the
term of this contract, all in the most approved manner
and to the satisfaction of the commissioner." The con-
tract further provided, in section 6, that "the planter
shall continue the work under this contract until notified
in writing by the commissioner that the homesteader is
ready to take over the actual cultivation of his lot under
his special homestead agreement"; and that "as soon as
may be, after any portion of the land covered by this
agreement shall be subdivided into homesteads, and the
commissioner shall have notified the planter, as provided
in section 6 hereof, that any homesteader or homesteaders
is or are ready to take over the actual cultivation of his
or their homestead or homesteads, the total actual cost,
as defined in section 2 hereof, shall be apportioned by the
commissioner, subject to final determination, in case of
dispute, as provided in section 11 hereof, between the said
homesteads and/or between the said homesteads and any
portion of said tract not homesteaded, in proportion to

their planted area." Other clauses provided for the manner of determining costs and interest charges. Section 7 provided for a lien in favor of the planter on the homesteader's crops as security for the reimbursement to the planter of moneys expended by it in cultivation of growing crops taken over by the homesteader from the planter.

The complaint of the present plaintiff, who appears as a homesteader entitled to a portion of the tract covered by the contract in question, is, as stated in the declaration, that the defendant "neglected and failed in any manner or at all to cultivate and/or replant in sugar cane all and singular that piece and parcel of land allotted to and taken by plaintiff" under the homestead agreement "and/or in any manner or at all fertilize, strip and otherwise cultivate to maturity and harvest crops of sugar cane, all in the most approved manner, as in and by said agreement stipulated, agreed and covenanted, in respect and regard to and in connection with crop of sugar cane harvested and taken off and from plaintiff's said homestead lot numbered 1409, in and during the year 1920."

The defendant filed a plea in bar setting up, first, that the contract under consideration "was rescinded and the said Waiakea Mill Company was ordered by the said commissioner of public lands to cease cultivating the sugar cane crop on all of the land comprised" in the plaintiff's homestead lot and that the defendant "was thereby prevented from cultivating, fertilizing, stripping and otherwise cultivating to maturity any crop of sugar cane belonging to the 1920 crop of sugar cane then growing on said piece of land;" and, second, that the contract "was rescinded and the said commissioner of public lands ordered the said Waiakea Mill Company to cease cultivating the crop of sugar cane growing on" the plaintiff's

homestead "on March 31, 1919, and said Waiakea Mill Company then ceased cultivating said piece of land and the crop of sugar cane growing thereon under said agreement, more than six years prior to the commencement of this suit, and that if there was any breach of said contract committed by the said defendant, it was committed prior to the said 31st day of March, 1919, more than six years before the commencement of this suit, and the plaintiff's claim and this action are wholly barred by the statute of limitations, now being chapter 150 of the Revised Laws of Hawaii, 1925." The circuit court sustained the plea in bar on both grounds and dismissed the action. The plaintiff thereupon sued out a writ of error to review the ruling.

The plaintiff evidently brings this action upon the theory that although she was not a direct party to the contract between the commissioner and the defendant, that contract was nevertheless entered into for her benefit and that as such beneficiary she is now entitled to recover of the defendant damages for non-performance of its obligations under that contract. The question of whether she is or is not a beneficiary entitled to bring this suit has not been argued and need not be decided. The undisputed evidence showed that on March 31, 1919, the commissioner of public lands addressed a letter to the defendant, reading as follows: "You are hereby notified to cease cultivation, except under arrangements with the homesteaders themselves, on the Waiakea Homestead lots and house lots, with the exception of those listed below which were reserved for other than homestead purposes or were not given out." Then follows a specific enumeration of the homestead lots "reserved" and of other lots "not given out." In pursuance of this notification the mill company ceased cultivating lot No. 1409, which is not one of the "reserved" lots nor one "not given out," and

did not thereafter cultivate that lot. It may have subsequently entered, although this does not clearly appear from the evidence and is not material in this case, for the sole purpose of harvesting the cane on the land and thereby protecting its lien. On March 14, 1919, Special Homestead Agreement No. 1650, relating to lot No. 1409, was entered into by and between the commissioner of public lands and one Kikuyo Fujii, of Waialua, Oahu, but that homesteader evidently failed to perform the agreement and was subsequently displaced by the award of the same lot to the present plaintiff, as homesteader. The special agreement between the plaintiff and the commissioner was dated March 5, 1920. Kikuyo Fujii did nothing by way of cultivating or caring for any crops of cane on lot 1409. Just what the present plaintiff has done in that respect does not appear and is perhaps immaterial at present. The command of the contract between the commissioner and the present defendant that it should cease cultivating when "notified in writing by the commissioner that the homesteader is ready to take over the actual cultivation of his lot under his special homestead agreement" is clear and unambiguous. No option was left to the planter under that agreement other than to cease cultivation upon receipt of such notice. The letter of March 31, 1919, constituted such a notice. The precise words of section 6 of the contract are not used but language of equivalent import is used; and that is all that the law requires. The entirely unambiguous statement is first made, "You are hereby notified to cease cultivation," and then, by very clear implication, an exception is added that the mill company may continue to cultivate "under arrangements with the homesteaders themselves," which necessarily presupposes that there were homesteaders ready to enter into such arrangements and to cultivate the land directly or through others. The

letter further clearly shows that cessation of cultivation is ordered on all of the Waiakea homestead lots "with the exception of those listed below which were reserved * * * or were not given out." The enumeration of certain homestead lots as having been "reserved" and of certain other lots as having been "not given out" necessarily carries with it the implication that all of the homestead lots at Waiakea, other than those named as "reserved," or as "not given out," were homesteaded and that homesteaders were in existence, as to each and all of them, ready to take possession.

Referring to the notification of March 31, 1919, from the commissioner of public lands to the mill company and proceeding upon her theory that the contract was made for her benefit, the plaintiff contends that the contract could not be rescinded or modified without her consent and that the notification of March 31, 1919, being without her consent, was therefore invalid. The answer is that if she is a beneficiary under the contract, as to which no opinion is expressed, she took it subject to all of its terms and not only to some of them. One of its terms was the express provision as to the circumstances under which the mill company's duty to cultivate would terminate.

Under the undisputed evidence the failure of the defendant to cultivate after March 31, 1919, was due solely to the notification received from the commissioner and duly given by the latter under the terms of the contract. There was no duty on the part of the mill company thereafter to cultivate,—no duty either to the commissioner or to anyone else, claiming as beneficiary or otherwise, under the contract. If there was any actionable failure of the mill company to cultivate prior to March 31, 1919, it occurred more than six years prior to the institution of this action, which was commenced not

earlier than December 14, 1925. Recovery of damages for any breach occurring prior to March 31, 1919, is barred by our six-year statute of limitations. One of the general rules concerning limitations of actions (subject to rare exceptions not possibly applicable to the case at bar) is "that time, when it has once commenced to run in any case, will not cease to do so by reason of any subsequent event which is not within the saving of the statute." Wood on Limitations, 3d ed., Sec. 6. To the same effect are 17 R. C. L. p. 826; 7 Ency. U. S. Rep. 987; *Walden* v. *Gratz,* 1 Wheat. 292, 296; *Croxall* v. *Shererd,* 5 Wall. 268, 289; and *Charmley* v. *Charmley,* 103 N. W. (Wis.) 1106, 1111. The right of action, if any there was, accrued in March, 1919, in favor of Kikuyo Fujii, the homesteader. Our statute contains no exceptions suspending its operation in favor of the present plaintiff under the circumstances existing in her case.

The judgment of the circuit court is affirmed.

*D. E. Metzger* (*A. G. Correa* with him on the briefs) for plaintiff in error.

*C. S. Carlsmith* and *H. Edmondson* (also on the brief) for defendant in error.