## MARY LINDSEY CORREA, NEE MARY K. LO, v. WAIAKEA MILL COMPANY.

### No. 1772.

ARGUED JANUARY 6, 1928.  DECIDED JANUARY 27, 1928.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

This action is predicated on the alleged wrongful taking and conversion of a matured but unsevered crop of sugar cane that was standing on land that was owned by the plaintiff. The defendant does not deny the plaintiff's ownership of the land nor does it deny that it severed and removed the crop of sugar cane therefrom. It does, however, by its special plea in bar, attempt to justify its

act. The justification relied on is (1) that it had a right
to enter upon the land for the purpose of enforcing a lien
it held on the sugar cane, which lien it is alleged, arose
out of a certain contract dated August 12, 1918, and that
its entry was solely for that purpose; (2) that on Decem-
ber 14, 1925, the plaintiff brought an action in assumpsit
for damages for breach of said contract of August 12,
1918, and that upon issues joined in said action a judg-
ment was rendered against her, which said judgment is
in full force and effect and that by reason of said judg-
ment and the pleadings in the case she is now estopped to
charge that the defendant committed a trespass either
by entering the said premises or by cutting the cane there-
on and marketing the sugar therefrom. The court below
after hearing evidence sustained the plea on both grounds
and dismissed the plaintiff's action. To this ruling the
plaintiff excepted and has brought the case here on writ
of error.

Formerly the land now owned by the plaintiff was a
part of the public domain and was embraced within the
ahupuaa of Waiakea in the district of Hilo on the Island
of Hawaii. It had been leased by the Territory to the
defendant, Waiakea Mill Company, and had been used
by the company for the cultivation of sugar cane. It was
contemplated by the government that the land would upon
the expiration of the lease be devoted to homestead pur-
poses. On June 14, 1918, the President of the United
States issued a proclamation reciting that "by reason of
the existence of a state of war it is essential to the na-
tional security and defense, for the successful prosecution
of the war, and for the support and maintenance of the
Army and Navy, to secure an adequate supply of sugar
and other food products in the United States, including
the Territory of Hawaii," and finding that "it is essential
in order to secure such adequate food supply to continue
to the fullest extent possible the cultivation of all public

lands in the Territory of Hawaii now under cultivation in sugar or other food products" and for these purposes authorizing the commissioner of public lands of this Territory, with the approval of the governor, "to enter into all necessary contracts with the lessees of any of said government lands, the leases of which have expired or which, while this proclamation is in force, will expire, or with any other person, firm, or corporation, for the continued cultivation of said lands, until such time as the same shall be occupied and cultivated by homesteaders."

By the authority thus conferred the commissioner of public lands of the Territory, by and with the consent of the governor, on the 12th day of August, 1918, entered into a contract with the Waiakea Mill Company, the defendant herein, under which contract the mill company now claims it acquired the right to enter upon the premises in question and to remove therefrom the crop of sugar cane standing thereon. This contract recites the ownership by the Territory of the ahupuaa of Waiakea in the district of Hilo and that the land therein embraced was then partly under cultivation in sugar cane and was about to be opened for homesteading. The Waiakea Mill Company, therein called the planter, agreed, "in so far as may be practicable, to cultivate and/or to replant in sugar cane the land in said tract now or which has heretofore been under cultivation in sugar cane; to continue to cultivate the sugar cane now growing on all of such land * * * and to fertilize, strip and otherwise cultivate to maturity and harvest the present and any successive crops of sugar cane during the term of this contract, all in the most approved manner and to the satisfaction of the commissioner." The contract further provides, in section 6, that "the planter shall continue the work under this contract until notified in writing by the commissioner that the homesteader is ready to take over the actual cultivation of his lot under his special home-

stead agreement;" and that "as soon as may be, after any portion of the land covered by this agreement shall be subdivided into homesteads, and the commissioner shall have notified the planter, as provided in section 6 hereof, that any homesteader or homesteaders is or are ready to take over the actual cultivation of his or their homestead or homesteads, the total actual cost, as defined in section 2 hereof, shall be apportioned by the commissioner, subject to final determination, in case of dispute, as provided in section 11 hereof, between the said homesteads and/or between the said homesteads and any portion of said tract not homesteaded, in proportion to their planted area." Other clauses provide for the manner of determining costs and interest charges. Section 7 provides for a lien in favor of the planter on the homesteader's crops as security for the reimbursement to the planter of moneys expended by it in cultivation of growing crops taken over by the homesteader from the planter.

On the 5th day of March, 1920, the plaintiff entered into a contract with the commissioner of public lands, which contract was approved by the governor, under the terms of which she acquired the right to purchase as a homestead the land upon which the defendant subsequently entered and from which it removed the crop of sugar cane which is the subject-matter of the instant suit. Among the provisions of this contract is the following: "The purchaser" (the plaintiff herein) "takes said lot and the crop or crops growing thereon subject to the lien on said crops which is provided for in a contract entered into under the authority of the presidential proclamation dated June 24, 1918, between the commissioner and the Waiakea Mill Company dated August 12, 1918, the terms of said contract insofar as they are applicable to the purchaser herein being made a part of this special homestead agreement by reference as fully and completely

as though said contract were actually incorporated herein."

Assuming but not deciding that the mill company had a lien on the sugar cane in question the inquiry still remains whether under the plea itself or under the evidence introduced in support of it the defendant had the legal right to enter the premises where the cane stood and remove it in order to protect and enforce its lien. If it had not such right the plea in bar should not have been sustained on that ground. Section 10 of the agreement of August 12, 1918, between the commissioner of public lands and the Waiakea Mill Company provides as follows: "If the homesteader, upon signing his special homestead agreement, or at any other time, shall fail to properly cultivate and maintain and harvest the growing crops as required by his special homestead agreement, the planter may at once, with the consent of the commissioner, in order to protect its lien aforesaid, enter, and to the satisfaction of the commissioner, cultivate, maintain, harvest and market the same and such crops thereafter as may be necessary to satisfy said lien, and account to the commissioner for the proceeds in the manner and on the basis set forth in section 9 hereof, provided, however, that the net profits to the planter, derived from the sale of any such crop or crops, which net profits shall be determined by deducting from the gross proceeds of such sale or sales, the actual cost of cultivation as defined in section 2 hereof, and the cost of harvesting and marketing expenses, and the five per cent (5%) representing the government's share, shall be applied first in satisfaction of said lien, and provided further that in case such homestead is transferred to another homesteader either by the original homesteader with the commissioner's consent, or by the commissioner directly in case of forfeiture by the original homesteader, such transferee shall be entitled to carry on the cultivation under his special home-

stead agreement subject to the same right of entry on the part of the planter."

It will be observed that the right of the mill company to enter and remove the cane from the homestead in order to protect its lien was not an unlimited right that could be exercised under all circumstances but was a conditional right which depended upon the existence of certain facts. These facts were (1) the failure of the homesteader upon signing his special homestead agreement or at any other time to properly cultivate and maintain and harvest the growing crops as required by his special homestead agreement, and (2) the consent of the commissioner to make the entry and harvest the crops. It is not alleged in the plea in bar that these facts existed at the time the defendant entered and removed the sugar cane nor are they shown by the evidence to have existed.

The plaintiff entered into the contract for the purchase as a homestead of lot No. 1409 (the land in question) on March 5, 1920. By this contract she acquired not only the right to occupy the premises described therein but she also acquired, subject to whatever lien the Waiakea Mill Company had, the crop of sugar cane standing on the land. The contract of August 12, 1918, between the commissioner of public lands and the defendant, the Waiakea Mill Company, was expressly made a part of the plaintiff's contract for the purchase of her homestead. While she assumed the burdens of the contract applicable to her she also became entitled to go upon the land and cultivate, maintain and harvest the crop of sugar cane growing thereon so long as she did so in a proper manner. In the event of her failure to properly cultivate, maintain and harvest the crop, and the commissioner gave his consent, the Waiakea Mill Company had a right under the contract to enter upon the land and do whatever was necessary for the protection of its

lien. Until her failure, however, the mill company derived no right under the contract to enter the premises and harvest the crop of cane although it did so for the sole purpose of enforcing its lien. If for reasons other than those prescribed by the contract it desired to enforce its lien it should have done so by appropriate judicial proceedings.

This brings us to the second claim of justification set up by the defendant. The facts upon which this claim is predicated are matters of record and are therefore undisputed. They are as follows: In 1925 the plaintiff brought an action against the defendant, the Waiakea Mill Company, to recover damages for an alleged breach of the contract of August 12, 1918, between the commissioner of public lands and the mill company. While the plaintiff was not a party to that contract her suit was brought on the theory that she was one of its beneficiaries and therefore entitled to sue for its breach. This theory was not contested by the mill company and the action was tried and determined upon the assumption that it was sound. In her complaint the plaintiff claimed in substance that under the contract of August 12, 1918, the mill company agreed to do certain specific things in regard to the planting or cultivating and bringing to harvest sugar cane on the land which she subsequently acquired as a homestead, and that the mill company had neglected to do these things to her damage in the sum sued for. On the trial of the case it was shown that on March 31, 1919, the mill company was notified by the commissioner of public lands to cease cultivation of certain Waiakea homestead lots, which notice included the plaintiff's lot No. 1409. This was held, under the terms of the contract, to excuse the mill company from any further performance of its obligation in that regard. It was also held that if prior to March 31 there was any failure of the mill company to perform its obligations

an action for such failure was barred by the statute of limitations of six years. Judgment was therefore rendered against the plaintiff and in favor of the defendant. This judgment was brought to this court for review and was affirmed. (*Correa* v. *Waiakea Mill Co.*, 29 Haw. 579.)

The plaintiff brought the instant action on the 1st day of March, 1926. Her first action was brought on December 14, 1925. The first action, as we have already observed, was for the purpose of obtaining damages for a breach of the contract of August 12, 1918. Her second action was brought for the purpose of obtaining damages for the unlawful taking and conversion of a crop of sugar cane. The conversion is alleged to have been committed at various times between the 6th and 27th days of March, 1920. In other words, when she brought her suit for a breach of the contract the conversion of the sugar cane, of which she complains in the instant suit, had already occurred. It is the contention of the defendant that both of the wrongs complained of, namely, the breach of the contract and the conversion having been committed (if committed at all) before the first suit was brought, it was the duty of the plaintiff to join in her first action both her claim for damages for the conversion and her claim for damages for a breach of the contract, and that having failed to do this she is now estopped from maintaining the present action. We think this contention is not sound. Each of the actions brought by the plaintiff was to obtain redress for a separate and distinct grievance growing out of separate and distinct acts. The first action was *ex contractu* and its purpose was to obtain damages for the alleged failure of the defendant to perform certain obligations it had assumed by its contract of August 12, 1918. The second action was *ex delicto* and was brought for the purpose of obtaining damages for the alleged conversion of a crop of sugar cane. The wrongs complained of were of an entirely different nature and if committed

would constitute separate and distinct causes of action. Even if they could, under our statute relating to joinder of causes of action (Sec. 2366, R. L. 1925), have been joined in plaintiff's first action (which question we do not decide), there was no legal compulsion on her to do so. The law on this subject is stated in *Haw'n Com. & Sug. Co. v. Wailuku Sug. Co.,* 14 Haw. 50, 53, as follows: "A person may bring several actions on as many different causes even though he might join all the causes in one action, but he may not as a rule bring several actions on different parts of one cause." 34 C. J., § 1246, states the rule thus: "The rule against splitting causes of action does not require a plaintiff who has distinct and disconnected causes of action against the same defendant, each of which by itself would authorize independent relief, to join them in a single suit, although they exist at the same time and might permissibly be so joined, except that under certain circumstances, to prevent vexation and oppression, the court may require plaintiff to consolidate them."

Finally it is contended by the defendant that the plaintiff in her first action alleged both a failure to properly cultivate and a failure to harvest the crop of sugar cane and that, having once asserted that the defendant did not harvest the crop, she is estopped from now asserting, as she has done in the instant action, that it did harvest the crop. As we construe the complaint in the plaintiff's first action this contention cannot be sustained. It is evident that the plaintiff's complaint against the defendant was that it had committed a breach of its contract with the land commissioner dated August 12, 1918, in that it had failed and neglected to "fertilize, strip and otherwise cultivate to maturity and harvest" the successive crops of sugar cane, from the inception of the contract, up to her acquisition and occupancy of the

land as a homestead. The language employed by the pleader is somewhat ambiguous. We nevertheless think that its reasonable construction is that the plaintiff's complaint against the defendant was not that it had failed and neglected to harvest the crops of cane but that it had failed and neglected to give them the attention it had agreed to give them from the time they were planted up to the time when they had reached maturity and were ready for harvest. This conclusion is strengthened by plaintiff's claim for damages, which is as follows: "That the failure and neglect of the said defendant" (to) "cultivate and/or replant in sugar-cane all and singular said piece and parcel of land so allotted to and taken by plaintiff under and by virtue of said special homestead agreement numbered 1859, and/or in any manner" (to) "fertilize, strip and otherwise cultivate to maturity the said 1920 crop of sugar-cane growing in and upon said homestead lot numbered 1409; were in contravention of plaintiff's rights in the premises, and to the damage of the plaintiff in the sum of sixteen thousand dollars ($16,000.00)." It is clear from this paragraph of the complaint that what the plaintiff relied on was the failure of the defendant to perform its duty regarding the replanting, cultivation, fertilizing and stripping of sugar cane to its maturity and that she did not predicate her claim for damages upon its failure to harvest the cane.

For the foregoing reasons we think the plea in bar was improperly sustained. The ruling appealed from is therefore reversed and the case remanded for such further proceedings as are not inconsistent with this opinion.

*D. E. Metzger* (*A. G. Correa* with him on the briefs) for plaintiff in error.

*C. S. Carlsmith* (also on the brief) for defendant in error.