## J. G. Campbell, Appellee, v. John Banks, Appellant.
## Gen. No. 8,411.

Opinion filed April 22, 1930.

O'Harra, O'Harra &·O'Harra, for appellant.

C. W. Warner and Mack & Mack, for appellee.

Mr. Justice Niehaus delivered the opinion of the court.

This is an appeal from a judgment for $90, which was rendered by the circuit court of Hancock county. The judgment is based upon the verdict of the jury which the court directed the jury to render; and the legal propriety of the directed verdict is the principal question involved in this appeal.

The record discloses the following facts; namely, that the appellant John Banks, who is an undertaker, was a tenant of the appellee J. G. Campbell; and a

tenant from month to month under a verbal leasing of a part of a two-story brick building in La Harpe owned by the appellee, which he used and occupied to conduct his business. The part occupied by him, was the west room in the east half of the building known as the "Campbell Block." In this room there were two storerooms; and a hall or lodge room above the storerooms, which were rented by the appellee to other tenants. The appellant agreed to pay a rental of $30 per month; and further agreed that he would do his own papering and painting and decorating; and put the room occupied by him in proper condition for his business. He occupied the room mentioned, from the 1st of September, 1927, until the first week of October, 1928; and paid the rent accruing to the appellee therefor until July 1st, 1928. After he had moved in, he discovered that the roof of the building was in a leaky condition; that when it rained, water would run down into the storeroom occupied by him from the leaks in the roof; and some of the goods and chattels which he had stored in the room for the purpose of his business as undertaker were damaged thereby.

The appellant's testimony concerning the matters referred to is as follows:

"Q. What happened in that storeroom while you were occupying it?

A. Every time it rained there were 15 to 20 places where the water run in. If I went home at night while it was raining, I could figure on my stuff getting damaged. I had to move it out in the front room to keep it from getting damaged. I have had buckets and tubs and went upstairs and had buckets and tubs up there trying to keep it from coming through and we have tried to sweep it out the back door.

Q. Did that condition grow better or worse?

A. Worse if anything.

Q. What effect did that water coming through the roof have on this decorating that you had done?

A. It let the paper come off that I put on the ceiling for about 18 feet from the back, it came off in patches, to about 12 feet from the front, and practically half of the side walls came off."

In reference to the damages resulting to the appellant, he testified as follows:

"Q. Mr. Banks, do you know what it cost you to do this work in this room that you rented?

A. I think I spent around $130.00.

Q. That was in money that you actually paid out aside from your own work then in addition to the damage?

A. Yes sir.

Q. . . . Tell the jury what else if anything that you had in there that was injured?

A. I had a lowering device.

Q. To lower caskets?

A. Yes sir.

Q. What effect did this rain have on this?

A. Got it wet and rusted it, and I had to have it refinished.

Q. What did it cost?

A. For redyeing and for evergreen was $180.

Q. Where was that done?

A. In Peoria.

Q. What else if anything?

A. Well the handles on several caskets rusted and had to be refinished. I polished all but one myself.

Q. Where was the other one repolished?

A. I took it to an embalming company in Burlington. . . .

Q. You stated that one bill you had to pay for putting this stuff in order was $180.

A. Yes sir.

Q. Was that necessary in order to put it in shape?
A. Yes sir.''

At the close of all the evidence, the appellee made a motion to strike out all evidence on behalf of the appellant as to the claim of set-off or recoupment; and all evidence relating to the condition of the roof; or the roof leaking. The motion to strike the evidence referred to was sustained by the court; and thereupon the court, on a further motion by appellee, directed the jury to return a verdict for the appellee and assess his damages at $90, which was done.

Under the undisputed facts disclosed by the record in this case, the action of the court in striking the evidence referred to, and directing the jury to return the verdict mentioned, was erroneous. The leasing in this case was only for a part of the building in question; that is to say, for one of the storerooms in the building; and therefore the general rule, that in the absence of a covenant by the lessor to repair, it is incumbent upon the lessee to keep the leased premises in repair, does not apply. The rule of law which is applicable to the facts in this case, is tersely stated in *Johns v. Eichelberger,* 109 Ill. App. 35, namely, ''where the landlord leases to a tenant a single room in a building, retaining control over the other parts including the roof, it is the duty of the landlord to keep the roof in repair so that the tenant may not be injured in his holding.'' In 1 Taylor on Landlord and Tenant, sec. 175a, this rule is stated to be as follows: ''A demise of parcels out of a building leaves the responsibility for what is not demised upon the landlord. The roof, halls and passages not demised, chimneys, eaves, and outside walls, remain in the landlord's charge.'' See also *Fairmont Lodge v. Tilton,* 122 Ill. App. 636; *Trego v. Rubovits,* 178 Ill. App. 127; *Burlingham v. Gordon,* 201 Ill. App. 474; *Trower v.*

*Wehner,* 75 Ill. App. 655. It is well settled also that in case the landlord fails to make repairs in violation of his duty, the tenant may occupy the premises, without repairs being made, and recoup his damages in an action for rent. *Oppenheimer v. Szulerecki,* 297 Ill. 81; *Cromwell v. Allen,* 151 Ill. App. 404; *Mitchell v. Plaut,* 31 Ill. App. 148; *Glickauf v. Maurer,* 75 Ill. 289; *Bernauer v. Hartman Steel Co.,* 33 Ill. App. 491.

Concerning the errors assigned upon the ruling of the court in reference to the admission or rejection of the evidence, it may be said that the appellee should have been allowed to answer the question propounded to him on cross-examination concerning what knowledge he had, if any, that the roof was leaking; and whether or not he had been notified about the leaks in the roof. The testimony of the appellant, which was stricken out by the court, was evidence tending to show neglect of the appellee's duty to make the necessary repairs to stop the leakage in the roof in question; and also tended to show that the personal property of the appellant in the storeroom occupied by him was damaged as the result of the appellee's neglect of duty. It also tended to show that damages were sustained by the appellant in consequence thereof. The rule concerning the measure of damages applicable to injury to the personal property under the circumstances disclosed by the record, is the amount necessarily expended in having the property repaired; that is to say, the necessary cost of repair. The question of agency is not involved in the matters referred to.

For the errors indicated, the judgment is reversed and cause remanded.

*Reversed and remanded.*