CARL E. SCHIMMELFENNIG *v.*
GROVE FARM COMPANY, LIMITED.

NO. 2922.

ARGUED OCTOBER 22, 1954.
REARGUED JUNE 16, 1955.                    DECIDED JULY 11, 1955.

TOWSE, C. J., STAINBACK, J., AND CIRCUIT JUDGE
MCKINLEY IN PLACE OF RICE, J., DISQUALIFIED.

OPINION OF THE COURT BY TOWSE, C. J.

This is an appeal from a judgment granting a motion for nonsuit in an action for breach of implied covenant to restore leased premises in substantially the same condition as at the inception of the lease.

Facts pertinent to the disposition of the issues establish that one John D. Neal leased a parcel of land and improvements in Koloa on the island of Kauai, "consisting of taro, kula and house lot" and containing approximately 3.07 acres to Koloa Sugar Company, Limited, for a term of twenty years from September 1, 1901. Neal died in 1902, and his daughter, Rebecca Schimmelfennig, thereafter acquired the interests of her brothers and sisters and became the owner in fee of the parcel by deed dated May 24, 1910.

The lessee occupied and remained in possession of the premises after expiration of the original twenty-year lease on August 31, 1921. A second lease containing covenants identical with those of the original lease except for terms of rental and duration, was executed between Koloa Sugar Company,. Limited and Mrs. Schimmelfennig on November 12, 1921, for a term of five years commencing on September 1, 1921. Upon expiration of the second lease on August 31, 1926, a total of eight successive leases each with identical covenants except for terms of rental and duration were thereafter executed between the parties. The fifth, sixth, seventh, eighth and ninth leases contained a recital that the lessee had held the demised premises from the commencement dates enumerated in each of the successive leases "in accordance with the provisions hereof and upon the understanding that this indenture of lease would be executed accordingly."

The tenth and final lease extended the ninth lease for a period two years from September 1, 1946 to August 31, 1948, "at the same annual rent and subject to all of the terms, covenants and conditions therein contained." Prior

to the execution of each lease a lapse transpired between the expiration date of the prior lease and the execution of the succeeding lease. Koloa Sugar Company, Limited, the original lessee, continuously occupied and remained in possession of the leased premises until its merger on June 30, 1948 with Grove Farm Company, Limited, the defendant-appellee herein. Grove Farm Company, Limited, thereupon, and as the successor in interest of the Koloa Sugar Company, Limited, occupied and remained in possession of the premises until August 31, 1949, holding over for a period of one year beyond the expiration date of the final lease of its predecessor lessee. By deed dated November 30, 1948, Mrs. Rebecca Schimmelfennig, the lessor, conveyed the leased premises to her son, Carl E. Schimmelfennig, plaintiff-appellant herein, who accepted rental for the one-year holdover period.

Complaint was filed in the circuit court of the first circuit on October 18, 1950, and subsequently amended on April 6, 1951. The amended complaint upon which issue was joined, after reciting the facts hereinabove detailed, alleged that "on June 7, 1901 there were on said premises a two-story frame building, a two-bedroom frame house and a three-bedroom frame house; that there were on June 7, 1901 a stone wall around said premises and a picket fence around a graveyard on said premises; that during the life of said lease as renewed, extended and held over, Defendant's assignor and subroger, Koloa Sugar Company, caused said buildings and stone wall to be removed and allowed its cattle to damage said picket fence * * *;" "that there was a covenant on the part of the lessee not to make or suffer waste, and a covenant that at the expiration of the lease it would quietly and peaceably deliver up the premises to the lessor; that the Defendant is obligated to restore said premises to substantially the same condition that they were in at the beginning of said lease

of 1901 under the covenant implied by law in such cases;" and although demands were made upon defendant-appellee for restoration both prior to and after vacation of the premises on August 31, 1949, "said buildings and stone wall have not been restored and said picket fence around the graveyard still remains in a state of disrepair."

Plaintiff-appellant, it would thus appear, elected to proceed upon the theory of an implied covenant to restore the premises in substantially the same condition as at the inception of the lease, subject to ordinary use, and sought damages of $4,700.00 for buildings, $3,906.00 for the stone wall, and $125.00 for the fence.

Defendant-appellee demurred to the amended complaint on the grounds, among others, that "the allegations of said amended complaint are so indefinite, vague and ambiguous it is impossible to ascertain therefrom with any degree of reasonable certainty when or approximately when the purported cause or causes of action thereof accrued to plaintiff or either of his predecessors in title"; and that "it fails to state the time or period or the approximate time or period when or within which Koloa Sugar Company, Limited, committed the acts of waste upon which the alleged cause or causes of action in such amended complaint set forth are purported to be founded."

The demurrer was overruled. Defendant-appellee thereupon pleaded the statute of limitations in that the action "was not commenced within six years after the cause of action accrued and that said cause of action or causes of action and each of them are therefore barred by the applicable Statute of Limitations, to wit, Section 10421, Revised Laws of Hawaii 1945." Upon the granting of a motion for change of venue, the cause was removed to the circuit court of the fifth circuit, where trial by jury was commenced upon the issues so joined.

At the close of plaintiff-appellant's evidence, defend-

ant-appellee moved for a nonsuit upon the grounds:

"* * * That under the evidence in the case, it definitely appears that any cause of action, or causes of action, set out in the complaint are barred by the applicable statute of limitations.

"* * * That it appears from the evidence in the case that the breach, or breaches, of implied covenant upon which the action is predicated occurred prior to the transfer of the property to the plaintiff in this case, and consequently even assuming that there had previously existed a cause of action therefor, that the plaintiff does not have that cause of action. In other words, that the breaches having occurred prior to the transfer, they cease to run with the land and have not vested in this plaintiff."

The motion was granted upon both grounds; judgment of nonsuit entered in favor of defendant-appellee; and plaintiff-appellant's amended complaint dismissed. Plaintiff-appellant's exception to the judgment is preserved in the bill of exceptions upon which this appeal is premised.

There is no dispute between the parties that, independently of express covenant, applicable provisions of law impose the obligation upon a lessee to restore the premises at the termination of a tenancy in substantially the same condition as at the inception of a lease, subject to reasonable use. (*U. S.* v. *Jordan,* 186 F. [2d] 803; *Lane* v. *Spurgen,* 100 Cal. App. [2d] 460, 223 P. [2d] 889; *Martin* v. *Medlin,* 81 Ga. App. 602, 59 S. E. [2d] 519; *Salina Coca-Cola Bottling Corp.* v. *Rogers.* 171 Kan. 688, 237 P. [2d] 218; *Donsky* v. *Sedlak,* 4 N. J. Misc. 49, 131 Atl. 619; *Welch* v. *Rice,* 61 Wyo. 511, 159 P. [2d] 180.)

Premised upon plaintiff-appellant's right of action upon the covenant implied by law in the circumstances presented, the first of the two issues presented is: Did the trial judge err in ruling as a matter of law that the cause

or causes of action were barred by the statute of limitations?

Section 10421, Revised Laws of Hawaii 1945, provides in part:

"The following actions shall be commenced within six years next after the cause of such action accrued, and not after:

"1. Actions for the recovery of any debt founded upon any contract, obligation or liability, excepting such as are brought upon the judgment or decree of some court of record; * * *."

The section is applicable to an action to recover damages for breach of covenant of a lease. (*Scott* v. *Pilipo*, 23 Haw. 349.) Accordingly, the period of limitation for institution of the instant suit was six years after the cause of action accrued.

To enable determination of whether the six-year limitation had expired against plaintiff-appellant's cause of action, inquiry must specifically be first directed to a determination of when the cause of action accrued to plaintiff-appellant. " 'A right of action accrues whenever such a breach of duty or contract has occurred, or such a wrong has been sustained, as will give a right to then bring and sustain a suit. That the statute begins to run from the time a right of action accrues, without regard to when the actual damage results, is well settled. * * * If an act occurs, whether it be a breach of contract or duty which one owes another or the happening of a wrong, whether willful or negligent, by which one sustains an injury, however slight, for which the law gives a remedy, that starts the statute.' " (*Scott* v. *Pilipo*, 23 Haw. 349, 355, quoting from *Aachen, etc., Ins. Co.* v. *Norton*, 156 Fed. 654, 656, 657; see 34 Am. Jur., *Limitation of Actions*, § 113, pp. 92, 93.)

The decided weight of authority sustains the rule that a right of action for breach of covenant to deliver up

leased premises in a particular condition at the expiration of a term relates to the future, and accrues only *upon expiration* of the term recited. (*Judkins* v. *Charette,* 255 Mass. 76, 151 N. E. 81; *Hill* v. *Hayes,* 199 Mass. 411, 85 N. E. 434; *Herboth* v. *American Radiator Co.,* 145 Mo. App. 484, 123 S. W. 533; *Fox* v. *Lynch,* 71 N. J. Eq. 537, 64 Atl. 439; *Demarest* v. *Willard,* 8 Cow. [N.Y.] 206; *Knutsen* v. *Cingue,* 113 App. Div. 677, 99 N. Y. Supp. 911; *Klayman* v. *Putter,* 171 Okla. 215, 43 P. [2d] 150; *City Hotel Co.* v. *Aumont Hotel Co.,* [Tex. Civ. App.] 107 S. W. [2d] 1094; see Note, 45 A. L. R. 79-82.) A distinction has been recognized between a covenant to keep leased premises in repair, and a covenant to return leased premises in substantially the same condition as at inception of the lease subject to reasonable use. In the former, the lessor is not required to await expiration of the term before instituting suit; in the latter, action may not be instituted until the expiration of the term. (*Gulesian* v. *St. James Amusement Co.,* 238 Mass. 172, 130 N. E. 212; *Schieffelin* v. *Carpenter,* 15 Wend. [N. Y.] 400; *Megerell* v. *State,* 46 N. Y. S. [2d] 685.) Accordingly, since a cause of action premised upon breach of a covenant, express or implied, to return premises in a particular condition accrues only upon expiration of the term, the statute commences to run from that date. (See *Scott* v. *Pilipo,* 23 Haw. 349.)

Facts adducible of record and established solely upon testimony of plaintiff-appellant's witnesses, indicate that the houses and stone wall upon the premises at the inception of the original twenty-year lease on September 1, 1901 were no longer in existence at the termination date on August 31, 1921. Consequently, any right of action for breach of the implied covenant to deliver up the premises in substantially the same condition, subject to reasonable use, having accrued at the expiration of the twenty-year

term on August 21, 1921, and the six-year limitation having expired, the instant suit of plaintiff-appellant upon that covenant was barred.

Plaintiff-appellant correctly asserts that a tenancy from year to year which results from a holdover beyond the termination date of a lease for a term of years becomes subject to the identical covenants and agreements contained in the expired lease. (*Pioneer Mill Co.* v. *Ward,* 34 Haw. 686.) It is also correctly asserted that compliance with a covenant to return leased premises in a particular condition at termination is not waived by a holdover tenancy beyond the term of the lease (*Lazarus* v. *Ludwig,* 45 App. Div. 486, 113 N. Y. S. 365; 51 C. J. S., *Landlord and Tenant,* § 410, p. 1159) or by the fact that a renewal is granted upon termination of the original lease (*McGregor* v. *N. Y. Board of Education,* 107 N. Y. 511, 14 N. E. 420). However, liability for breach of such covenant having accrued at the termination of the original lease, the execution of a new lease neither dissolves nor does it constitute a bar to a cause of action which has theretofore accrued under the original lease. (*Herboth* v. *American Radiator Co.,* 145 Mo. App. 484, 123 S. W. 533; *Walker* v. *Seymour,* 13 Mo. 592; 51 C. J. S., *Landlord and Tenant,* § 76, p. 630-631; see *McGregor* v. *Board of Education,* 107 N. Y. 511, 14 N. E. 420.) The rule in this jurisdiction is that once the period of the statute has commenced running, it continues uninterruptedly over all subsequent disabilities and intermediate acts and events not within the saving of the statute. (*Correa* v. *Waiakea Mill Co.,* 29 Haw. 579; *Charmley* v. *Charmley,* 125 Wis. 239, 103 N. W. 1106.) "One of the general rules concerning limitations of actions * * * is 'that time, when it has once commenced to run in any case, will not cease to do so by reason of any subsequent event which is not within the saving of the statute.' Wood on Limitations, 3d ed., Sec. 6." (*Correa*

v. *Waiakea Mill Co., supra* at 586.) Section 10421, Revised Laws of Hawaii 1945, contains no provisions suspending its uninterrupted operation in favor of a lessor in circumstances such as here presented where the original improvements upon the premises became and were nonexistent at the termination of the original twenty-year term.

We accordingly conclude that any right of action in favor of plaintiff-appellant for breach of the implied covenant to deliver up the premises accrued at the end of the term. (See *Correa* v. *Waiakea Mill Co.,* 29 Haw. 579; *Charmley* v. *Charmley,* 125 Wis. 239, 103 N. W. 1106.) "When a man can sue he must, and if he does not the statute keeps running." (*Watts* v. *Chreste,* 270 Ky. 407, 109 S. W. [2d] 803, 807.)

It has also been held that "[w]hen a tenant holds over, the tenancy is subject to covenants and stipulations contained in the original lease only so far as are applicable to the new condition of things." (*Funston* v. *Hoffman,* 232 Ill. 360, 83 N. E. 917, 920.) The houses and stone wall being nonexistent at the inception of the first holdover period following the expiration of the original twenty-year lease on August 31, 1921, a covenant implied in law to return the premises in substantially the same condition as at the inception of the lease obviously cannot be deemed to apply to that portion of the leased premises constituting the houses and stone wall.

That a holdover beyond the terms of an original lease does not toll the running of the six-year period of limitation is also recognized in the uniformly accepted principle that a lessee who remains in possession beyond the termination date does not ipso facto become a tenant from year to year unless the lessor consents, expressly or impliedly, to the holding over. "A tenancy from year to year cannot be inferred from the mere fact of holding over; the landlord must, in some manner, recognize the tenancy. If, after the

lease expired, the landlord should agree upon a term, or receive rents, or recognize the party holding over as his tenant, these and kindred facts might be regarded as facts from which a tenancy might be created. But the mere fact that the landlord takes no steps, after the lease expires by its own terms to regain possession cannot be regarded as an act from which an inference of a new tenancy could be drawn." (*Cairo* v. *St. L. R. Co.* v. *Wiggins Ferry Co.*, 82 Ill. 230, 233; *Weber* v. *Powers*, 213 Ill. 370, 72 N. E. 1070; *Balaban & Katz Corp.* v. *Channel Amusement Co.*, 336 Ill. App. 126, 83 N. E. [2d] 27; *Krull* v. *Rose*, 88 Neb. 655, 130 N. W. 272; *Monks* v. *Hess*, 53 S. D. 275, 220 N. W. 490.)

On the other hand, "[w]hen the tenant, whose term has expired by efflux of time, instead of quitting the premises, as he ought to do, remains in possession, holding over as it is called, he is a wrongdoer, and may be treated as such by the owner, his landlord." (*Den ex dem. Decker* v. *Adams*, 12 N. J. L. 99, 100; *Grant* v. *White*, 42 Mo. 285; *Leonard* v. *Spicer Mfg. Co.*, 103 N. J. L. 391, 139 Atl. 15.) In such circumstances, "he becomes a tenant at sufferance, and the landlord has the option to treat him as a tenant or proceed against him as a trespasser, or bring an action for unlawful detainer without service on the tenant of any prior notice, but if a new contract is shown either express or inferable from the dealings of the parties, the estate becomes one at will, and a new contract may be inferred from an agreement for a new lease." (3 Thompson, *Real Property*, § 1511, pp. 781-782 [1940]; *Kaye* v. *M'Divani*, 6 Cal. App. [2d] 132, 44 P. [2d] 371; *Leggett* v. *Louisiana Purchase Exposition Co.*, 157 Mo. App. 108, 137 S. W. 893; *National Bank* v. *People's Grocery Co.*, 153 S. C. 118, 150 S. E. 478; *Monks* v. *Hess*, 53 S. D. 275, 220 N. W. 490.)

In the instant case, no such tenancy was recognized by the lessor during the interim period of approximately two and one-half months which elapsed between the expiration

of the original twenty-year lease on August 31, 1921, and the execution of the second lease on November 12, 1921. During the interim period, the lessor herein could have exercised his alternative options to hold the lessee as a tenant holding over rightfully (*Halsted & 79th Bldg. Inc.* v. *O'Grady,* 349 Ill. App. 536, 111 N. E. [2d] 382; *Leggett* v. *Louisiana Purchase Exposition Co.,* 157 Mo. App. 108, 137 S. W. 893; *Den ex dem. Decker* v. *Adams,* 12 N. J. L. 99; *Monks* v. *Hess,* 53 S. D. 275, 220 N. W. 490; see R. L. H. 1945, § 10402), or to hold the lessee as a trespasser by instituting an action for damages or by seeking ouster through ejectment or summary possession proceedings (R. L. H. 1945, § 10401; see *Carvalho* v. *Correa,* 38 Haw. 250; *Gomes* v. *Perry,* 26 Haw. 661; *Territory* v. *Correa,* 24 Haw. 165; *Harrison* v. *McCandless,* 22 Haw. 129; see also S. L. H. 1945, Act 251, § 10404.01, p. 282). The lessor, possessing this right at the termination of the lease on August 31, 1921, and having failed to institute suit during the six-year period thereafter, is forever barred (R. L. H. 1945, § 10421; *Scott* v. *Pilipo,* 23 Haw. 349); for the statute, having commenced to operate on the termination date of the lease was not tolled by the holdover of the premises by the lessee or by any subsequent events, acts, or disabilities within the saving of the statute (*Correa* v. *Waiakea Mill Co.,* 29 Haw. 579).

Plaintiff-appellant contends in this connection that the trial judge "failed to give proper weight" to *Honolulu Construction & Draying Co., Ltd.* v. *City and County of Honolulu,* 30 Haw. 871, which defined the terms "renewal or extension" as not being words of art, and which therefore may be construed to " 'mean whatever the parties intended when contracting.' " (*Id.* at 876.) That case held that when a lessee entered into a contract to furnish crushed rock during the term of his lease or "any renewal or extension thereof" and subsequently obtained a new

lease embracing the same land, the new lease thereby became an extension of the original lease within the meaning of the contract to furnish crushed rock. Plaintiff-appellant urges that the facts established herein indicate "that the new leases were in their essential terms the same as the old lease" and "that the parties intended the successive leases to be renewals of the original lease," and that the *Honolulu Construction & Draying* rule warrants interpretation of the successive leases herein as "renewals"; and "if they are renewals the plaintiff's cause of action did not arise until the end of the last renewal."

We are mindful of the rule in that case, but the conclusion proffered does not follow in the circumstances presented. Whether denominated as "renewals" or "extensions" or "new leases" under that rule, the rule applicable to the determination of the issue herein is that a cause of action for breach of the implied covenant to restore accrues upon the termination of the lease, which termination in the instant case occurred on the date of termination of the original twenty-year lease on August 31, 1921.

In this connection the applicability of the six-year limitation as a bar to the additional cause of action founded upon the implied covenant to restore the fence enclosing the grave plot on the premises warrants consideration. In each of the leases executed, the lessee covenanted to "respect and leave undisturbed a certain grave-yard (kupapau) on the said premises." We construe the phrase "respect and leave undisturbed" as imparting a covenant on the part of the lessee not to interfere in any manner with the area constituting the graveyard. In the absence of express stipulation, the general rule is that a lessee in such cases is under no obligation to repair or maintain any portion of the leased premises which has been reserved to others and over which he possesses no authority or control. (*Rathbun Co.* v. *Simmons,* 90 Cal.

App. 692, 266 Pac. 369; *Campbell* v. *Banks,* 257 Ill. App. 354; *Nederlander* v. *Cadillac Clay Co.,* 264 Mich. 434, 250 N. W. 281; *Longbotham* v. *Takeoka,* 115 Or. 608, 239 Pac. 105.) Covenants to restore are strictly and understandably limited to those portions only of the premises which a lessee has in possession (*Tremont Theatre Amusement Co.* v. *Bruno,* 225 Mass. 461, 114 N. E. 672; 32 Am. Jur., *Landlord and Tenant,* § 812, p. 691-692) ; and where as here, an express covenant is undisputed, no implied covenant to repair or maintain that portion of the premises so excluded from the control or authority of the lessee is created (*Halsted & 79th Bldg., Inc.* v. *O'Grady,* 349 Ill. App. 536, 111 N. E. [2d] 382). A cause of action, if any existed for the restoration of the fence enclosing the grave plot must therefore be predicated upon the express covenant of the lessees to "respect and leave undisturbed" the area so defined.

A cause of action to recover damages to the grave plot fence premised upon an implied covenant to restore would likewise be barred by the statute under the principles above enunciated relating to removal of the stone wall and houses. Testimony pertinent to this portion of plaintiff-appellant's cause of action establishes that the damage to the grave plot fence complained of occurred prior to the termination of the eighth lease on August 31, 1942. That right of action having accrued upon the termination date of the lease was likewise barred by the six-year statute of limitations.

The trial judge did not err in granting the motion for nonsuit upon the first ground that the cause or causes of action were barred by the statute of limitations.

The second issue is: Did the trial judge err in ruling that the breach of implied covenant upon which the action was predicated, having occurred prior to conveyance of the property to plaintiff-appellant, ceased to "run with the

land" and, resultingly, failed to vest a cause of action in said plaintiff-appellant.

The general rule is that the transferee of a reversion may not recover upon a breach of covenant to repair or to restore committed prior to the transfer. Such right is held to inure to the benefit of the owner of the reversion at the time of the breach. "A covenant by the lessee to repair and return the premises in good condition ceases to run with the land after being breached by the tenant. The breach of the covenant makes of the same a chose in action which does not pass to a purchaser of the property in the absence of an express assignment thereof." (3 Thompson, *Real Property*, § 1259, p. 355 [1940]; *Witt* v. *Louisville & N. R. Co.,* 208 Ky. 126, 270 S. W. 732; *Haeussler* v. *Holman Paper-Box Co.,* 49 Mo. App. 631; *Bailey* v. *Meade,* 250 Mass. 46, 144 N. E. 110.) The latter case succinctly states the rule:

"But before the conveyance by Meade to Smith the term of the lease had expired, the covenant to return the premises in good condition had been broken, and a claim for damages had arisen which inured personally to the various owners of the reversion proportionately to their respective interest. Meade's share in this right of action was not conveyed to Smith by the deed of the real estate. *In other words, the covenant being broken ceased to run with the land.*" (*Bailey* v. *Meade,* 250 Mass. 46, 144 N. E. 110, 111; emphasis added.)

Plaintiff-appellant concedes the rule to be as quoted, but contends, without supporting authority, that it is inapplicable to the instant case since in the *Bailey* case, *supra,* "the tenant's possession under the lease had actually ended and the obligation to restore had arisen before the plaintiff became the transferee of the reversion." Such tenuous factual differentiation affords no grounds for the asserted distinction. The rule is one of general application

which summarily deprives a transferee of the right to sue upon any such covenant if the breach has occurred prior to the transfer and the cause of action itself has not been assigned to the plaintiff (*Michael* v. *Mitchell,* 118 Ind. App. 18, 73 N. E. [2d] 363; *Wallace* v. *Paulus Bros. Packing Co.,* 191 Or. 564, 231 P. [2d] 417; *Foss* v. *Stanton,* 76 Vt. 365, 57 Atl. 942) ; and applies with equal force to an action for breach of covenant to restore where the transfer of a reversion occurs after the termination date of the lease and the lessee holds over in possession after such termination.

"One who purchases the reversion after the expiration of the lease acquires a right of action for the subsequent breach of covenant by the tenant holding over, but none for a breach occurring prior to the conveyance." (51 C. J. S., *Landlord and Tenant,* § 413, p. 1161; *Haeussler* v. *Holman Paper-Box Co.,* 49 Mo. App. 631; *Johnson* v. *Churchwardens of St. Peter,* 4 Adm. & Eccl. 520, 111 Eng. Reprint 883; 32 Am. Jur., *Landlord and Tenant,* § 815, p. 693.) "In the absence of a different rule, created by statute or by express contract, where a tenant holds over after the expiration of a written lease, the law implies that he holds over subject to the terms of the lease as far as the same are applicable to a monthly letting. Where the tenant holds over and there is no change in the ownership of the reversion, and breaches of the tenant's contract occur both before and after the expiration of the term of years, the landlord cannot sue for breach of covenant for the tenant's misconduct during his monthly occupancy, but can recover for those only as for a violation of the implied contract, while his action for breaches occurring during the term of years is an action on the express covenants of the lease. Since such would be the result, even where the landlord and tenant remain the same, it is *a fortiori* the result, where the landlord disposes of his interest after the

expiration of the term, and during the tenant's monthly occupancy. *The purchaser in such a case acquires the premises in the condition in which they then are, and not in a condition in which they were years before."* (*Haeussler* v. *Holman, supra* at 635, 636; emphasis added.)

In the record before us, the tenth and final lease between defendant-appellee and plaintiff-appellant's predecessor in interest expired on August 31, 1948. The removal of the houses and stone wall, as disclosed by the facts established by plaintiff-appellant's own witnesses, occurred during the period of the original twenty-year lease which terminated on August 31, 1921. Damage to the fence enclosing the grave plot is established to have occurred during the period of the eighth lease which terminated on August 31, 1942. Consequently, the implied covenant to restore, having been breached prior to plaintiff-appellant's acquisition of title on November 30, 1948, ceased to run with the land, vesting no cause of action in plaintiff-appellant in the absence of an assignment thereof.

The trial judge did not err in granting the nonsuit upon the second ground that plaintiff-appellant possessed no cause of action upon the implied covenant to restore since the reversion was acquired by him subsequent to the breach of that covenant.

The judgment appealed from is affirmed.

*D. N. Ingman* (*W. C. Ingman* with him on the briefs), for plaintiff-appellant.

*C. E. Cassidy* (*Pratt, Tavares and Cassidy*) on the brief, for defendant-appellee.